308 So.2d 333 (1975)
James Charles O'BRIEN, Jr.
v.
Ann Lea O'BRIEN.
No. 10120.
Court of Appeal of Louisiana, First Circuit.
February 10, 1975.
Rehearing Denied March 10, 1975.
Writ Refused April 25, 1975.
Henry D. Salassi, Jr., Baton Rouge, for appellant.
Gerard E. Kiefer, Baton Rouge, for appellee.
Before LOTTINGER, COVINGTON and BAILES, JJ.
*334 LOTTINGER, Judge.
James Charles O'Brien, Jr., petitioner, filed this suit for a reduction of permanent alimony and child support which had been awarded in a divorce judgment in favor of his former wife, the defendant, Ann Lea O'Brien. The defendant answered the petition for reduction in the form of a general denial and filed an exception of res judicata to the petition insofar as it sought a reduction in permanent alimony. The basis for the exception was that the parties had contracted with each other for permanent alimony in the previously executed community property settlement.
After a hearing, the Court below rendered a judgment reducing the amount of permanent alimony and child support and dismissed the peremptory exception. The alimony was reduced from $500.00 to $275.00 per month based upon the fact that the defendant was then receiving income of $225.00 per month as a result of a liquidation and investment of her share of the community property which had been partitioned prior to divorce and liquidated and invested by defendant after the divorce. From this portion of the judgment and the dismissal of the exception defendant has lodged this devolutive appeal.
The undisputed facts are as follows. Petitioner and defendant were married in 1954 and of this marriage six children were born. During the year 1971, when the ages of the children ranged from fifteen to four years of age, the petitioner abandoned the matrimonial domicile. Defendant sought and obtained a legal separation on the grounds of abandonment and was awarded alimony pendente lite in the amount of $500.00 per month and child support in the amount of $1,433.00 per month for the support of the six children. Petitioner was further condemned to pay the mortgage note on the family home and on an automobile in the possession of Mrs. O'Brien as well as medical bills as they accrued.
Subsequently, petitioner filed a suit for a partition of the community property, but during the pendency of this suit, on March 30, 1973 the community property settlement was confected between the parties dividing by agreement the assets and liabilities of the community property existing between them. In addition to dividing the property and the indebtedness of the community of acquets and gains formerly existing between the parties, as part of defendant's consideration, the settlement provided as follows:
"In addition to the foregoing the said James Charles O'Brien, Jr. does hereby agree to pay to Ann Lea O'Brien and the said Ann Lea O'Brien does hereby agree to receive from James Charles O'Brien, Jr. the sum of FIVE HUNDRED AND NO/100 ($500.00) DOLLARS per month as permanent alimony and the sum of ONE THOUSAND THREE HUNDRED AND NO/100 ($1,300.00) DOLLARS per month as child support for the children born of said marriage. The parties further agree that the Judgment of the Family Court in Suit Number 23,126 shall be modified by Joint Stipulation of the parties so as to reflect the change in the amount of child support and alimony to be paid by James Charles O'Brien, Jr."
On the same day, by written stipulation, and in accordance with the community property settlement, the alimony and child support provisions of the separation judgment were amended to grant defendant $500.00 per month alimony and $1,300.00 per month child support for the six children. On May 25, 1973 petitioner obtained a judgment of divorce on the grounds of living separate and apart for two years and by stipulation the alimony was continued in the judgment at $500.00 per month and child support at $1,300.00 per month.
Previous to the separation of the parties, they, and their family lived for several years in a large home in the eastern portion *335 of Baton Rouge, Louisiana situated on a three and one-half (3½) acre landscaped lot. In the community property settlement defendant received this property and the mortgage obligation of some $20,000.00.
During September, 1973, some three and one-half months after the divorce, defendant decided to sell the house and did so for a gross price of $86,000.00. The sale was motivated because she decided to move with the children to Shreveport where she thought the welfare of the children would best be served, as both her family and Mr. O'Brien's family have lived there for many years. She bought a smaller house so that the upkeep would be less than that necessary to maintain the large house and acreage in Baton Rouge.
As a result of the sale of the house in Baton Rouge, after paying the expenses, the move and a down payment and improvements on the smaller house in Shreveport, Mrs. O'Brien had $45,000.00 cash left over. She has deposited this amount in a bank in Shreveport. She receives approximately $225.00 per month income from this investment which is payable quarterly. She has no additional income and this investment, obtained as a result of the liquidation of a large portion of her share of the community property, is the basis for petitioner's petition to terminate the alimony.
Article 160 of the Louisiana Civil Code provides that after divorce, the wife, who has been free of fault, is entitled to alimony, at the discretion of the Court, out of the property and earnings of her husband, up to one-third of his income. In addition to freedom from fault this article requires insufficient means for support. The article provides that this alimony shall be revoked if it becomes unnecessary, and terminates if the wife remarries.
In Bernhardt v. Bernhardt, La., 283 So. 2d 226, the Court held that a "consent" alimony decree in a judgment of divorce evidenced the fact that the wife was free from fault in that her insufficient means of support were proven to the satisfaction of the Court rendering the judgment. The Court then went on to say:
"Having acknowledged judicially his wife's right to receive alimony, relator will not now be heard to complain that proof of an element requisite to the granting of alimony was not made.
It was incumbent upon relator to prove a change in respondent's circumstances, or his own. from the time of the divorce decree to the time of the rule to an extent that further alimony reduction was warranted, other than that already allowed by the trial in appellate courts."
Thus, the question before us at this time concerns itself with the last sentence of Article 160 of the Civil Code which provides that: "This alimony shall be revoked if it becomes unnecessary, and terminates if the wife remarries." Of course, the wife has not remarried so the only question now before the Court would be whether or not the alimony has become unnecessary.
In Bazzell v. Bazzell, La.App., 289 So.2d 202, wherein the Court was confronted with a similar situation to the one before us now, the Court said:
"After considering all of the evidence, we conclude there was no substantial change in the financial circumstances of the appellant, from the time of the award of alimony to the trial of the rule. In accordance with the jurisprudence announced in Bernhardt v. Bernhardt, supra, the appellant having consented to pay his former wife alimony at the time she obtained a final divorce, judicially admitted that she was in need of alimony, and it was incumbent upon him to show a change of circumstances of the appellee, or his own, in order to secure a modification of the alimony decree. It is an elementary rule of law that one who asserts a fact must carry the burden of proof by a reasonable preponderance of the evidence. After a careful examination of the evidence relative to a *336 change in the financial circumstances of the parties hereto, it is our opinion that he has failed to show a sufficient change of his circumstances, or that of the appellee, from the time of the consent alimony award to the time of the trial of the rule, to justify a modification, or termination of the alimony award previously determined and fixed. Therefore, the demands of the plaintiff must be rejected."
The evidence discloses that the petitioner has a present income of roughly $40,000.00 per year. No substantial change has been shown since the rendition of the consent alimony decree. Therefore, under the provisions of Article 160 of the Civil Code Mrs. O'Brien would be entitled to alimony up to 1/3 of this figure or the sum of $13,000.00 per year at the time of the divorce. She, however, bargained and contracted for $500.00 per month permanent alimony in the community property settlement which was confected before the divorce. By stipulation, this amount was included in the divorce decree.
The record discloses that at the time of the divorce decree the defendant herein had $65,000.00 equity in her home and nothing in cash. She now has $20,000.00 equity in her home and $45,000.00 in cash. It is true that she has invested the $45,000.00 in cash in an account at a Shreveport bank from which she receives the sum of $225.00 interest per month, payable quarterly.
In the Bazzell case (Supra) following the divorce decree, Mrs. Bazzell sold the home and received $38,000.00 in cash and a second mortgage note for $15,000.00 net to her. She further inherited property valued at $37,500.00. Her husband filed a rule for reduction and at the trial of the rule Mrs. Bazzell admitted that she had $30,000.00 in cash. Except for the reduction of a cash balance by $8,000.00, there was no significant change in her assets from the time of the divorce decree until the time of the trial of the rule. Since the divorce decree she had earned better than $7,000.00 but she was not working at the time of the trial. The Court found that Mrs. Bazzell's assets at the time of the trial of the rule were basically the same as at the time of the divorce decree which amounted to her liquidated share of the community assets. The judgment of the trial court reducing alimony was reversed.
Under the doctrine of the Bernhardt and Bazzell cases, had the defendant herein not converted the property received in the community property settlement prior to the divorce suit into cash there could be no reduction in alimony. Had she converted it into cash and not put it at interest there could be no reduction. We feel that to reduce the alimony payments because of the interest income would be contrary to law since there is no real change in her circumstances, particularly during such times of inflation as we now have before us. By investing the money at interest she is merely attempting to protect the property freely conveyed to her for due consideration by her late husband from depreciation. She was merely selling a large estate which, due to the family difficulties, was no longer necessary and purchasing a modest estate to be occupied by herself and her children. To punish her for this prudent handling of her affairs would be unjust.
For the reasons hereinabove assigned, the judgment of the Lower Court is hereby reversed and there will be judgment herein dismissing petitioner's petition at petitioner's cost.
Reversed.