314 So.2d 372 (1975)
Mrs. John G. SWIDER
v.
John G. SWIDER.
No. 6703.
Court of Appeal of Louisiana, Fourth Circuit.
June 17, 1975.
Rehearing Denied July 8, 1975.
Writ Refused September 26, 1975.
Jerald N. Andry, Andry & Andry, New Orleans, for plaintiff-appellant.
Kenneth E. Pickering, Kehl & Pickering, New Orleans, for defendant-appellee.
Before SAMUEL, REDMANN, BOUTALL, MORIAL and BEER, JJ.
*373 REDMANN, Judge.
Having by this 1974 rule obtained only a $10 reduction from the $250 monthly alimony set by consent judgment of July 1973 (and a $10 reduction in the $65 weekly child support fixed in December 1972), an ex-husband appeals, seeking elimination or at least further reduction of alimony only. We affirm.
When alimony has been fixed by consent judgment, a change in amount can only be obtained by showing a subsequent change in circumstances; Bernhardt v. Bernhardt, La.1973, 283 So.2d 226.
The only changes the ex-husband shows are: (1) his bonus for the year 1973 was only $1,600 (whether or not net of withholding taxes is not shown), compared to $2,900 for 1972 (net of $1,100 withholding) and (2) his second wife is no longer working.[1]
The reduction in the ex-husband's second community's income is not completely clear. The second wife's income must be considered as part of the overall circumstances; Marcus v. Burnett, La. 1973, 282 So.2d 122. It is clear that, as of the July 1973 consent alimony judgment, the second wife's salary was $366.44 biweekly or $9,527.44 annually, or $793.95 monthly on average. Judging from the 1972 income tax return, this represents after-income-tax income of about $570 a month, and after-all-tax income of about $510. Added to this, the $1,300 after-tax reduction in annual bonus$108 a monthindicates a total monthly after-tax reduction of about $618.[2]
Even so, the ex-husband's after-all-tax income (judging from his 1972 return and maximum F.I.C.A. tax) remains about $2,000 monthly, though reduced from the second community's prior $2,618. He must pay about $238 for his minor daughter's support and (unless we amend) $240 (of before-tax income; perhaps $180 or less after taxes) to his wife. Even after these payments he will have after-tax income on the order of $1,500 or more monthly for himself, his second wife and two children (for one of whom support of $100 is received, making the total available $1,600, more or less).
The ex-wife will have $130 net earnings plus $18 royalty plus $240 alimony, or $388 (of which $258 remains income-taxable to her) plus $238 for her minor child, a total of $626 (less some tax) for herself and the minor child.
In our view, the trial judge may well have considered that the $250 former consent fixing was a minimum for the exwife's needs, which left the ex-husband with a comfortable surplus over his own second family's minimum needs. Thus, when the ex-husband's second community's income suffered a $600 monthly net decrease in income, the trial judge's response of only a $10 decrease in alimony (and a $43 decrease in child support) apparently made the ex-husband's family bear the bulk of the decrease because it was more able to do so.
All circumstances considered, we conclude that the trial judge did not abuse his discretion.
Affirmed.
*374 SAMUEL and MORIAL, JJ., dissent.
SAMUEL, Judge (dissenting).
This case involves alimony after divorce under Civil Code Article 160. As distinguished from alimony pendente lite under Civil Code Article 148, which has reference to "sufficient income" of the wife, alimony after divorce has reference to "sufficient means" of the former wife. Our jurisprudence has construed the alimony after divorce contemplated by Article 160 as a pension, limited to a sufficiency to cover necessities, and frequently has used the words "necessitous circumstances" almost synonymously with the words "sufficient means".
Mrs. Swider owns her home, with its furniture, and her car. She lives with her 16 year-old minor daughter, for whom she receives child support, and her major daughter, who has an income in excess of $6,000 per year. In addition to the alimony paid to her by Mr. Swider, her current monthly income is $130 in wages for part-time work, $80 from her major daughter for room and some board for that daughter and her small child, and an oil royalty of $18.33. She has failed to show any reason why she is unable to earn more than $130 per month or why the major daughter should not pay more for room and board.
Under these circumstances, even taking into consideration the rule that an award of alimony for the maintenance of a former wife is within the sound discretion of the trial court, I feel the reduction should be in a greater amount than the $10 per month allowed by the judgment appealed from.
Unlike alimony pendente lite in connection with which the wife is not required to work and earn an income even though she is able to do so, as regards alimony after divorce, when she is capable of doing so the former wife is required to work and earn an income. Without sufficient reason therefor, part-time work by the former wife, instead of full time with its greater income, appears to me to be as unacceptable as no work at all if the former wife is otherwise capable of working and earning a living In addition, without further explanation the $80 a month paid by Mrs. Swider's major daughter, which includes room and some board not only for that daughter but also for the daughter's small child, appears to be an inadequate amount. If it is inadequate, Mr. Swider is being required to pay the amount of that inadequacy by including the same in his alimony payments to Mrs. Swider. There may or may not be a legal obligation on the part of Mr. Swider to support, or contribute to the support, of his major daughter and her child; but even if there is such an obligation, it cannot be enforced in this manner.
Whether Mr. Swider's family is or is not better able to bear the bulk of the decrease in alimony payments is immaterial. The primary issue presented is whether or not Mrs. Swider has "sufficient means" within the contemplation of Article 160.
For the reasons assigned, I respectfully dissent.
MORIAL, Judge (dissenting).
Is an ex-wife who has approximately $6,800.00 in equity in her non-income producing home, except for $80.00 per month as rent she receives from her daughter for herself and her child, royalty income of $220.00 per year, a 1971 Duster automobile, and earns $130.00 per month against total monthly expenses of $920.72 without sufficient means for her maintenance? Obviously she is.
I look to all her "means" in determining whether or not they are sufficient. She has no income producing property except for a small royalty income of $220.00 per year. Should she be required to sell her residence and/or its contents and her 1971 Duster, which she needs to transport her to and from her place of employment, to provide cash for her support? Under the *375 circumstances she is not required to do so. Hardy v. Hardy, 214 So.2d 231 (La.App. 4 Cir. 1968).
The ex-wife in 1973 refinanced a $20,250.59 mortgage on the real property (present residence of ex-wife), which she obtained at a partition of the community, resulting in approximately $6,496.70 cash. She expended this cash to pay off the balance of $2,000.00 due on her 1971 Duster. Other bills and expenses which she incurred when her $750.00 per month alimony was eliminated in December 1972 after the partition is of no moment. She had none of the cash proceeds from the refinancing arrangement at the time of this hearing in the district court. Further, the jurisprudence is well settled that a wife is not required to deplete the entire sum received from the community in order to be entitled to permanent alimony. Latour v. Guilbeau, 256 So.2d 731 (La.App. 3 Cir. 1972); Loe v. Loe, 131 So.2d 106 (La.App. 2 Cir. 1961).
On July 6, 1973 when the parties entered into the consent decree appellant's average net monthly income after taxes was $1,656.36 including the monthly proration of the $2,906.01 after tax bonus he had received at the beginning of 1973. At the time of the district court hearing, appellant's average net monthly income after taxes was $1,453.00 plus the monthly pro rata of an annual $1,600.00 before tax bonus for a monthly total income of $1,586.33, resulting in a net reduction of $70.03 per month. I deem it improper to include in appellant's income on a monthly pro rata basis the total severance pay of appellant's second wife of $1,800.00 or the child support she receives for a child of a previous marriage. The earnings of appellant's second wife were not considered when alimony was fixed on July 6, 1973, likewise, her lack of earnings at the time of the district court hearing should not be considered in determining whether or not appellant is entitled to a reduction.
Since the consent decree of July 6, 1973, not only has appellant's average net monthly income after taxes decreased, but he has adopted a child. Noteworthy, is that Pamela Swider, who lives with the appellee, works and pays rent.
While I recognize the rule that an award of alimony assessed against a husband for the maintenance of his former spouse is within the sound discretion of the trial court and should not be disturbed on appeal in the absence of a clear showing of an abuse of discretion, the evidence I think clearly shows such a change of circumstances to indicate a greater reduction than that granted by the trial judge. Neither party should be made to suffer unnecessarily by the demands of the other.
For the foregoing reasons, I respectfully dissent.
NOTES
[1] The ex-husband complains of certain circumstances relative to the ex-wife (e. g., she works only part-time; she does not charge their adult daughter enough for room and board). But these circumstances existed when the consent alimony was fixed. They therefore cannot be a basis for change. The ex-husband also testified that he adopted a child "John Christian," after the December 1972 fixing of child support, but he did not show that the adoption occurred after the July 1973 consent alimony judgment. Moreover, his 1972 income tax return showed he was already claiming a child "Christian". Thus no change in circumstances on this account was proven.
[2] The husband's testimony of $719 take-home pay for the wife (disregarding an October 1973 increase) ignored that, when added to his higher income, her earnings were taxed more than the amount withheld.