MARVIN, Judge.
The divorced husband appeals a judgment rejecting his demands to reduce permanent alimony because the wife sold the former family home after the divorce and invested the proceeds in an interest bearing account which increased her income approximately $4,800 per year. Appellant contends that the trial judge erred in finding this was not a sufficient change in circumstances which would warrant reducing permanent alimony. CC Art. 160. We find no error and affirm.
The litigants were divorced June 10, 1981, after 37 years of marriage. Appellant was found at fault and he consented to pay permanent alimony of $1,150 per month to the wife. In a community property settlement on November 19, 1980, the appellee received the family home, the furniture and fixtures, and a 1978 Cadillac. Appellant received the stock in his business corporation, life insurance policies, cemetery plots, and a motorcycle. The husband’s annual net earnings at the time of divorce were approximately $30,000. We note there is no evidence in the record of *122 this appeal to show a change in the appellant’s earnings.
Appellee is 57 years old and is unemployed because she is in ill health. On April 1, 1982, she sold the former family home in Shreveport and moved to Tyler, Texas. She received $83,500 cash and the ■buyers assumed the outstanding mortgage indebtedness. After paying brokerage fees and other debts, she invested the remaining $60,000 in a certificate of deposit at approximately eight percent interest. This interest provides additional income to her of about $400 per month. Her current monthly, living expenses are about $1,800, which includes apartment rent of $405. The notes on the home she sold were about $350 per month.
Appellant sought the reduction on March 28, 1983, relying upon CC Art. 160. This article directs the court to consider the several listed factors and any other relevant factors in determining the entitlement and amount of alimony after divorce. One of these factors is the liquidity of the assets owned by the spouses.
Appellee relies on oases which indicate that conversion of real estate into cash does not justify modification of CC Art. 160 alimony. See O’Brien v. O’Brien, 308 So.2d 333 (La.App. 1st Cir.1975), writ ref.; Stolier v. Stolier, 357 So.2d 1334 (La.App. 4th Cir.1978), writ ref. These cases were decided before CC Art. 160 was amended in 1979 to include the liquidity and other factors. CC Art. 160 spoke only in general terms and did not list specific factors until the 1979 amendment.
While the statute directs that liquidity be considered by the court in determining whether a modification of alimony may be warranted, the court is not limited in considering and weighing all relevant factors and circumstances of the individual case. In some circumstances, liquidity alone may be controlling, while in others it may not.
This record reveals that the appellee borrowed about $7,800 from her father to meet her living and medical expenses when her only income was the $1,150 per month permanent alimony. She paid her debt to her father after she sold the Shreveport home. Her current monthly expenses of about $1,400, excluding $405 apartment rent, are not seriously disputed, although she was cross-examined on some items. Appellee also revealed and corroborated her intent to purchase a smaller home in Texas with some or all of the $60,000 she has on deposit. The trial court considered these factors, along with liquidity, and concluded that appellee’s permanent alimony needs were more than the $1,150 which she was receiving in monthly permanent alimony. This conclusion is not clearly wrong and is supported by the record.
We cannot say that the trial court abused its discretion in denying appellant’s demands and, at appellant’s cost, we affirm the judgment.