463 So.2d 768 (1985)
James ROMERO, Plaintiff-Appellee,
v.
Deanna Duhon ROMERO, Defendant-Appellant.
No. 83-1091.
Court of Appeal of Louisiana, Third Circuit.
January 16, 1985.
Writ Denied March 22, 1985.
*769 Kenneth W. Cole, Lafayette, for defendant-appellant.
Norman L. Williams, Lake Charles, for plaintiff-appellee.
Before GUIDRY, STOKER, DOUCET, LABORDE and YELVERTON, JJ.
DOUCET, Judge.
This appeal arises from a rule brought by James Romero, to rescind alimony, for child support, and for one-half of all medical and hospitalization expenses.
After a hearing, the trial court rendered a judgment reducing the amount of alimony from $500 per month to $350 per month. The trial court refused to award child support and one-half of medical and hospitalization expenses. Mrs. Romero appeals only from that part of the decision reducing the alimony award.
James Romero and Deanna Duhon Romero were married on May 26, 1961. Three children were born of the marriage. In 1982, the ages of the children ranged from 17 to eight years of age. The oldest child had been emancipated by marriage. On July 9, 1982 James Romero filed a petition for divorce based on one year living separate and apart. A consent judgment was entered pendente lite, granting the care, custody, and control of the two minor children and the use of the family home to James Romero. The consent judgment also granted alimony pendente lite of $500 per month to Deanna Romero, with the same sum to be paid as permanent alimony after the divorce.
On September 15, 1983 a judgment of divorce was entered including the provisions of the earlier judgment. A community property settlement agreement was entered at that time. Mrs. Romero's share of the community included certain household furnishings, an undivided one-half interest in the family home, and one-half of a community bank account amounting to $3,000.00. Further, she exchanged her interest in all retirement benefits of James Romero for $7,626.00 in cash, which was to be paid upon the sale of the family home.
In March 1983 the home was sold. Mrs. Romero received about $35,000 from the sale. This brought the cash portion of Mrs. Romero's half of the community property to approximately $45,000. Out of this amount she bought a mobile home for $14,000, a lot on which to put it for $7,000 and a 1981 Cadillac Eldorado for $14,000. At the trial on the alimony rule, Mrs. Romero testified that approximately another $5,000 was spent on miscellaneous items, leaving a balance of $5,000 in the bank. Mrs. Romero has no income other than the alimony payments.
After taking evidence about the circumstances of each party, the trial court reduced the award of permanent alimony to $350.00 per month. Mrs. Romero appeals this decision alleging that there was not a sufficient change of circumstance on the part of either party to justify a reduction in alimony.
La.C.C. art. 160 sets out the circumstances in which permanent alimony may be granted and the factors to be considered in setting the award:
"When a spouse has not been at fault and has not sufficient means for support, the court may allow that spouse, out of the property and earnings of the other spouse, alimony which shall not exceed one-third of his or her income. Alimony shall not be denied on the ground that one spouse obtained a valid divorce from the other spouse in a court of another state or country which had no jurisdiction over the person of the claimant spouse. In determining the entitlement *770 and amount of alimony after divorce, the court shall consider the income, means, and assets of the spouses; the liquidity of such assets; the financial obligations of the spouses, including their earning capacity; the effect of custody of children of the marriage upon the spouse's earning capacity; the time necessary for the recipient to acquire appropriate education, training or employment; the health and age of the parties and their obligations to support or care for dependent children; any other circumstances that the court deems relevant.
In determining whether the claimant spouse is entitled to alimony, the court shall consider his or her earning capacity, in light of all other circumstances.
This alimony shall be revoked if it becomes unnecessary and terminates if the spouse to whom it has been awarded remarries or enters into open concubinage."
This court in Cromwell v. Cromwell, 419 So.2d 974 (La.App. 3rd Cir.1982) stated with regard to the last sentence of La.C.C. art. 160 that:
"Jurisprudence interpreting this portion of Article 160 consistently holds that for a court to alter an alimony award, including one established by a consent judgment, the party seeking modification must show a change in circumstances of either party from the time of the award to the time of the trial of the alimony rule. Bernhardt v. Bernhardt, 283 So.2d 226 ([La.]1973); Fisher v. Fisher, 320 So.2d 326 (La.App. 3rd Cir.1975); Swider v. Swider, 314 So.2d 372 (La.App. 4th Cir.1975); cert. denied, 320 So.2d 551 (1975)."
It was shown at trial that Mrs. Romero received $45,000 after the sale of the family home in fulfillment of the community property settlement agreed upon by the parties at the time of the divorce.
The conversion of an asset in the form of community property interest, into another form is not in and of itself a change of circumstances. In O'Brien v. O'Brien, 308 So.2d 333 (La.App. 1st Cir. 1975) writ denied 311 So.2d 262, the wife had not only converted her community property interest into cash but was earning substantial interest on the proceeds. The court stated that:
"Under the doctrine of the Bernhardt, [supra] and Bazzell [v. Bazzell, 289 So.2d 202 (La.App. 1st Cir.1973)] cases, had the defendant herein not converted the property received in the community property settlement prior to the divorce suit into cash there could be no reduction in alimony. Had she converted it into cash and not put it at interest there could be no reduction. We feel that to reduce the alimony payments because of the interest income would be contrary to law since there is no real change in her circumstances, particularly during such times of inflation as we now have before us. By investing the money at interest she is merely attempting to protect the property freely conveyed to her for due consideration by her late husband from depreciation. She was merely selling a large estate which, due to the family difficulties, was no longer necessary and purchasing a modest estate to be occupied by herself and her children. To punish her for this prudent handling of her affairs would be unjust."
While Mrs. Romero may not have been as prudent in her handling of her finances, she has provided herself with a home, and relieved herself of the burden of rent.
Since the O'Brien decision was rendered, La.C.C. art. 160 has been amended to include liquidity of assets among the factors to be considered in determining entitlement to and amount of alimony.
"While the statute directs that liquidity be considered by the court in determining whether a modification of alimony may be warranted, the court is not limited in considering and weighing all relevant factors and circumstances of the individual case. In some circumstances, liquidity alone may be controlling, while in others it may not." Davis v. Davis, 445 So.2d 121 (La.App. 2nd Cir.1984).
*771 At the time of the trial on the alimony rule, Mrs. Romero had approximately $5,000 in her bank account. The rest of the community property settlement had been again converted into non-liquid form.
Mr. Romero also alleges that his circumstances have changed for the worse due to his remarriage. Expenses of a subsequent marriage should be taken into account in determining the amount of alimony to be paid. However, these expenses cannot negate the obligation to support a former spouse. Sonfield v. Deluca, 385 So.2d 232 (La.1980). Testimony at the trial on the alimony rule did reveal an increase in expenses. Mr. Romero is now helping to support his wife's two children from a previous marriage. His second child, who is now over 18, has started college at the University of Southwestern Louisiana. However, these new expenses are offset by Mrs. Romero's income from her work and child support payments from her former spouse. Mr. Romero has also experienced increased liquidity after the sale of his family home. He has $15,000 in a certificate of deposit and approximately $4,000 in his checking account remaining from the community property settlement.
It appears that any change for the better in the former Mrs. Romero's circumstances is balanced by an approximately equal change in Mr. Romero's circumstances.
We reverse the ruling of the trial court and restore the award of alimony in the amount of $500.00 per month.
REVERSED.
STOKER, J., dissents and assigns written reasons therefore.
LABORDE, J., dissents and assigns written reasons.
STOKER, Judge, dissenting.
I respectfully dissent. Our appellate function requires that we determine whether or not the trial court was clearly wrong in its findings or abused its discretion. The majority correctly states the law applicable. However, the majority makes a finding of fact that there were no changed circumstances justifying the trial court's reduction of alimony. In reviewing the facts it appears to me that there are changes to some extent at least in Mr. Romero's circumstances if not Mrs. Romero's circumstances. I do not believe that the changes are so insubstantial that we can say that the trial court was clearly wrong or abused its discretion. I would affirm.
LABORDE, Judge, dissenting.
I respectfully dissent from the majority opinion.
James Romero, plaintiff-in-rule, and Deanna Romero, defendant-in-rule, were divorced in 1982. The divorce was uncontested and fault is not an issue. The parties stipulated by agreement that James would have sole custody and care of the two minor children of the marriage, and that James would pay Deanna $500 per month permanent alimony.
On July 6, 1983, James filed a rule to rescind alimony and for child support and children's medical expenses from Deanna. On August 29, 1983, the rule was heard by district judge Ronald Cox. The judge took the matter under advisement. On August 31, 1983, he decided that Deanna should not pay any portion of the children's support and medical expenses. However, the judge found a change in circumstances warranting a reduction in permanent alimony from $500 per month to $350 per month.
Deanna has appealed. She argues that there has been no change in circumstances sufficient to warrant a reduction in alimony. There is no other issue before this court.
The majority reverses the trial court, and reinstates $500 per month as the permanent alimony amount to be paid by James to Deanna. The majority sets forth Civil Code Article 160 as the controlling provision for awards of permanent alimony, and notes that the jurisprudence has consistently held that alteration of a previously adjudged amount of permanent alimony requires *772 "a change in circumstances of either party from the time of the award to the time of the trial of the alimony rule." The majority also notes that the burden of proving such a change is on the party seeking modification.
The majority focuses upon changes in the parties' financial status since divorce resulting from the use each has made of partitioned community property. Specifically, the majority discusses James' contention that Deanna's use of her half of the proceeds from the sale of the family home to buy a house trailer, a lot, a Cadillac Eldorado, and to open a checking account of about $5,000, indicates that Deanna has sufficient liquid assets so that alimony is unnecessary under article 160. The majority notes that the jurisprudence does not treat a conversion of assets into another form as per se a change in circumstances warranting a modification of alimony. Further, it is noted that although liquidity is an express consideration under article 160, it is but one factor, and it should not control this case. The majority concludes that "any change for the better in [Deanna's] circumstances is balanced by an approximately equal change in [James'] circumstances."

APPLICABLE LAW
The majority opinion correctly applies the "changed circumstances" test under article 160 to this case. However, the legal test should have been applied only in a review of the ruling by the trial court; the majority, in effect, tries the case from scratch on selected portions of the record.
Just as the article 160 test applies to this case, so does the rule that findings of fact in the trial court will not be altered on appeal unless the findings are manifestly erroneous, in light of the record as a whole. Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978). In a domestic relations context, this standard of deference, applied to a fact-finding trial judge, is expressed as examining the factual findings which warrant a "changed circumstances" ruling, and the actual alteration (if any) of alimony payments, to ascertain whether the trial judge has abused his wide discretion over such matters. See, e.g., Jordan v. Jordan, 406 So.2d 322, 324 (La.App. 3d Cir.1981). Put simply, our review has two stages: (1) whether the trial judge reached a supportable factual determination and (2) whether the proper legal test was correctly applied to that factual determination. Here, the question unanswered by the majority opinion is whether the trial judge's findings are supported by the record. Of course, a fortiori, the test of "changed circumstances" must be applied to those findings.
The trial judge in this case did not bless us with written reasons for his decision. The judgment simply states that he considered all the law and evidence in reaching his decision. With this background, our duty as a reviewing court is to ascertain whether, under the appropriate "changed circumstances" legal standard, the record taken as a whole supports the trial judge's decision. In this case, the trial judge necessarily decided that certain witnesses and certain portions of testimony were credible, and that other witnesses and portions of testimony were not credible. Thus, in reviewing the record as a whole, this court must keep in mind that the trial judge simply may not have believed that certain factual conditions testified to by one or more witnesses existed, particularly when the testimony of one witness directly contradicts that of another. In light of the above-discussed legal principles, the record in this case will now be examined.

DISCUSSION OF THE CASE
The majority correctly concludes that the conversion of Deanna's community property into cash and other more liquid assets does not, alone, mandate a reduction in alimony. However, other factual issues also tend to show changed circumstances.
James, at the time of the trial of the rule (which, it is submitted, is the latest pertinent time), faced increased expenses because his seventeen year old daughter (also Deanna's daughter) was entering her first year of college at USL. James had also *773 remarried, but the costs entailed by this are negligible and of little legal consequence in any event, as explained by the majority. James was encountering increased expenses for both minor children of his marriage to Deanna. Because of his new family (second wife plus two step-children), James had space problems in his home, and had to acquire a mobile home for two of the children. James' salary as Lafayette Police Chief increased only slightly subsequent to the divorce and before trial of the rule; the increase was his cost-of-living raise.
Deanna moved into her trailer home in Breaux Bridge after the divorce. She claims to have problems with finances, yet, as discussed below, she apparently has sufficient funds for a quite active social life.
Deanna has a high school education, but a paltry employment history. She was, by and large, a housewife while married to James. Deanna claims that back, neck, and headache problems prevent her from taking any job that requires standing, sitting, stooping, walking, reaching, or bending. She testified that such activities tire her immensely, and cause severe pain. She did, however, apply for employment with one florist just after the divorce, but she did not get the job and remains unemployed.
Deanna undisputedly has had back and neck surgery, but the extent of her medical recovery was not established at trial. She claimed to be worse off than ever. Three witnesses, however, testified that they saw her dancing the "jitterbug" often at bars in the Breaux Bridge and Lafayette area. They testified that she did not seem to be in pain or have limited mobility; one witness even complimented her prowess and fluidity on the dance floor. Another witness commented that divorce seemed to have done "wonders" for Deanna's physical condition and mental disposition. It should be noted that these three witnesses are Lafayette policemen. The record reflects that their jobs are secured by civil service, but common sense dictates that these witnesses could, of course, have been influenced by the fact that they were testifying for the chief of police. In any event, the trial judge apparently believed these three witnesses, and Deanna did not dispute their testimony. The credibility of witnesses is distinctly a matter to be resolved by the trial fact-finder (here, the trial judge).
Deanna testified that about one month before the trial, she fished for four straight days in Lake Henderson, and that she caught about 140 fish. She explained that although physical activity causes her pain, she has to do something every once in a while.
Based on the record, the trial judge could have concluded, and apparently did conclude, that Deanna's physical condition had improved since the divorce. He reasonably could have concluded that she was now able to support herself to some extent, and that $500 per month alimony was no longer necessary. The trial judge could further have concluded that James' obligation to support dependent children had grown more onerous. Based on Deanna's more liquid assets, and her apparent ability to afford a "jitterbugging" lifestyle, the judge could have concluded that her financial circumstances had changed for the better. A reading of article 160 will reveal that all of the above considerations are relevant, plus several more that are apparent from previous discussion. The judge could have found, and did find, that James had proved a change in circumstances warranting a reduction in alimony.
With no opportunity to see and hear the witnesses, and view the evidence firsthand, it is hard to say whether the trial judge's decision was correct. There is room for argument both ways. However, based on the record as a whole, the trial judge's decision cannot be said to be manifestly erroneous. Beyond this standard, we should not second guess fact-finding by the trial judge in cases of this nature. The majority chooses to ignore those aspects of the record that support the trial judge's changed circumstances ruling on the basis of Deanna's improved physical condition *774 and corresponding increased ability to attain employment. The majority also ignores the increased financial burden faced by James, which is not offset by a mere cost-of-living salary increase. The majority further ignores those portions of the record which indicate that Deanna has a surplus of financial resources in comparison with James, as evidenced by her lifestyle.
The crux of the problem in this case is the trial judge's failure to indicate in the record, explicitly, his reason or reasons for judgment. Recorded oral or written reasons would leave no doubt as to whom he believed, and which of several possible sets of factual circumstances he found to exist. Possibly, the trial judge based his ruling solely on a "liquidity" assessment, or on his conviction that anyone who owns a Cadillac (albeit used) is not destitute to the point that $500 per month support is necessary for the basic needs of life. This is the hypothetical rationale for the decision of the trial judge that the majority reverses today, and if no other considerations were present, I would join in that reversal. However, it is far more plausible that the decision of the trial judge rests on the resolution of the disputed facts discussed above, which are contained in the record yet overlooked by the majority. By ascribing only legally insufficient factual conclusions to support the trial judge's legal determination of changed circumstances, the majority sets up a straw man that is easily blown over. Deference to the trial judge's factual province requires more. Legally sufficient factual conclusions can be drawn from the record and these considerations should at least be acknowledged by the majority.
Under the proper standard of appellate review, we must affirm if the record, taken as a whole, supports the lower court's decision when the proper legal test is applied. As illustrated above, the record, taken as a whole, with certain disputed evidence resolved in favor of the plaintiff, supports the trial judge's decision under the "changed circumstances" test. I would affirm the decision of the trial court. Therefore, I respectfully dissent from the opinion issued by the majority.