603 So.2d 786 (1992)
Charles Clinton DABNEY
v.
Loretta Horne DABNEY.
No. CA 91 0898.
Court of Appeal of Louisiana, First Circuit.
June 29, 1992.
Rehearing Denied September 4, 1992.
*787 John Wayne Jewell, New Roads, for appellee.
Michael E. Parks, New Roads, for appellant.
Before COVINGTON, C.J., and LeBLANC and WHIPPLE, JJ.
COVINGTON, Chief Judge.
Loretta Horne Dabney appeals from a judgment on rules brought by her to increase permanent alimony, for contempt, and to traverse an inventory of community property.[1] Appellant's former husband, Charles Clinton Dabney, filed an answer to these rules and also filed a cross rule to reduce permanent alimony, to extinguish his requirement to provide hospitalization insurance, and for a preliminary injunction to enjoin her from telephoning him and his second wife, Laura. The trial judge found for Mr. Dabney on the counter rule, reducing permanent alimony from $550.00 per month to $150.00 per month and denying her rule for contempt for Charles' failure to maintain hospitalization insurance.
On appeal, she argues that the court erred in failing to find him in contempt of the previous judgments ordering him to maintain hospitalization insurance on her; that the trial court erred in finding that she failed to prove any change in circumstances that would warrant an increase in permanent alimony, and in finding that he offered sufficient proof of her ability to support herself; and in reducing the amount of permanent alimony to be paid to Mrs. Dabney without a showing of a change in circumstances. We agree with appellant that the trial court committed an abuse of discretion in reducing the amount of alimony to be paid to her from $550.00 to $150.00, and accordingly reverse on that issue. We affirm the court's finding that Mr. Dabney was not in contempt for failing to maintain hospitalization insurance, and *788 that Mrs. Dabney failed to show a change in circumstances warranting an increase in permanent alimony.
The parties were married for thirty-seven years before the final judgment of divorce was entered on June 9, 1987. Loretta Horne Dabney suffers from numerous medical complaints, including colitis, high blood pressure, and diabetes, and has undergone surgery for breast cancer. She receives monthly retirement disability payments from her former employer, the federal government, and has not worked since retiring from that job, except for part-time employment for her son's business since the divorce.
In the judgment of divorce, Mr. Dabney was ordered to pay the sum of $760.00 per month in permanent alimony, to keep and maintain insurance on their vehicles, and to "maintain hospitalization insurance on Loretta Horne Dabney." She argues that he is in contempt of this judgment because he allowed the coverage afforded her through the Blue Cross policy of health insurance obtained through his employer to lapse and subsequently obtained two different health insurance policies which were inadequate to cover her hospitalization needs. (On one of these two policies, coverage was denied because of a pre-existing condition; the other simply did not pay a sufficient amount to cover hospitalization bills.)
We agree with the trial judge that Mr. Dabney did not deliberately allow the insurance to lapse, and in any event the judgment did not order him to maintain specifically the Blue Cross policy. Apparently some confusion was manifested on his part concerning the necessity to submit forms clearly indicating Mrs. Dabney would still be covered under the Blue Cross policy, following the divorce and his subsequent remarriage. However, she failed to show that he intended to defy the order. As evidenced by his attempt to obtain additional policies of insurance after he realized she was no longer covered under the Blue Cross policy, he attempted to comply with the judgment rather than defy it. He testified that he asked his agent, once he realized those policies were inadequate, to obtain another policy for Mrs. Dabney, and was told by his agent that she was "uninsurable."
Appellant cites Anderson v. Anderson, 504 So.2d 624 (La.App. 4th Cir.), writ denied, 508 So.2d 72 (La.1987), in support of her position. Anderson is distinguishable. In that case the husband was ordered to "provide hospitalization insurance to Lucy D'Anzey Anderson at least similar to that provided for himself and/or his employees." In the present case, appellee was ordered merely to maintain hospitalization insurance; there was no requirement that the insurance be a specific continuation of the Blue Cross policy. We affirm the trial court on this point, and move on to discuss the issue of whether the permanent alimony award should have been decreased from $550.00 per month to $150.00 per month under the standards set by La.Civ.Code art. 112 and the jurisprudence interpreting it.
The judge's reasons for judgment indicate that he found Charles Dabney's total net income to be $4,484.15 per month, an increase of $606.48 after deduction of increased expenses, from the time alimony was previously set. The reasons for judgment state, "Normally, this increase in his ability to pay would be a significant change of circumstances to increase the amount of alimony to Loretta Dabney. However, Charles Dabney has offered sufficient proof of an increase in Loretta Dabney's ability to support herself."
The only evidence in the record concerning an increase in her ability to support herself was testimony concerning her receipt of the sum of $39,456.83, one-half of the proceeds of a certificate of deposit, in a community property settlement. The judge found that her statement of expenses was greatly exaggerated, and had in fact doubled since the previous hearing with no accompanying showing of increased need. Her medical expenses were quite high, apparently based in part on the fact that she continued to visit a doctor in New Roads, the former matrimonial domicile, despite her current residence in Mississippi. Her *789 expenses had likewise gone up since the move to a home she owned in Mississippi, despite the fact that her house note was lower than her rent had previously been, because of the need to expend great sums in renovating her home.
Obviously the judge found that the combination of her exaggeration of expenses and her receipt of $39,456.83 in community property proceeds sufficed to show that she was better able to support herself, and thus any change in Charles' circumstances was counteracted by her increased ability to support herself.
To prevail in an action to reduce or terminate a previous alimony award, the plaintiff must prove a change in circumstances, either in his own or the defendant's, from the time of the divorce to the time the motion is filed. Arabie v. Arabie, 447 So.2d 22 (La.App. 1st Cir.1984). The trial court's determination whether to reduce, increase, or continue the amount of alimony should not be overturned or modified by an appellate court absent a clear abuse of discretion. Arabie, 447 So.2d at 25. The determination of "sufficient means" is insusceptible of solution by an exact formula or monetary index and should be accomplished by applying the rule of "reasonableness in the light of all circumstances," considering the factors of liquidity of assets, the consequences of liquidation, and the relative financial positions of the parties. Boisfontaine v. Boisfontaine, 357 So.2d 90 (La.App. 4th Cir.), writ denied, 358 So.2d 644, 645 (La.1978). Liquid assets must be depleted to some extent before a spouse may be entitled to permanent alimony; however, a spouse is not required to sell nonliquid assets in order to support herself. Green v. Green, 567 So.2d 139 (La.App. 2d Cir.1990).
Here, the only "change" in Loretta's circumstance since the time the last motion was filed was the receipt of over $39,000.00 in liquid assets in community property. Even accepting the trial judge's conservative estimate that her expenses were $946.00, her income remained the same: $459.97 net, excluding alimony. She is still left with an approximate $500.00 deficit in meeting her monthly expenses. Her assets have remained substantially the same as they were at the time the rule was tried earlier: the only difference is that now she has a liquid sum rather than an undivided one-half interest in a certificate of deposit.
In O'Brien v. O'Brien, 308 So.2d 333 (La.App. 1st Cir.), writ denied, 311 So.2d 262 (La.1975), this court, citing Bazzell v. Bazzell, 289 So.2d 202 (La.App. 1st Cir. 1973), reasoned that the conversion of community property assetsin that case, a houseinto cash and in turn into interest paymentsdid not constitute a change in circumstances justifying a reduction in alimony. The court said,
... had the defendant herein not converted the property received in the community property settlement prior to the divorce suit into cash there could be no reduction in alimony. Had she converted it into cash and not put it at interest there could be no reduction. We feel that to reduce the alimony payments because of the interest income would be contrary to law since there is no real change in her circumstances, particularly during such times of inflation as we now have before us. By investing the money at interest she is merely attempting to protect the property freely conveyed to her for due consideration by her late husband from depreciation.
O'Brien, 308 So.2d at 336.
Likewise, in Romero v. Romero, 463 So.2d 768 (La.App. 3rd Cir.), writ denied, 465 So.2d 735 (La.1985), the court held, following O'Brien and Bazzell, that the conversion of an asset, in the form of community property interest, into another form is not in and of itself a change of circumstances. The court in Romero reversed a judgment which had decreased a wife's permanent alimony award from $500.00 to $350.00 per month and found that the wife's receipt of $45,000.00 after the sale of the family home in fulfillment of the community property settlement agreed upon by the parties did not constitute a change in circumstances, where her husband had also improved his circumstances *790 by his receipt of the proceeds of the sale of the home.
In the present case, the appellant argues, as did the wife in Bazzell, that her assets were substantially the same as they were at the time the rule was tried. We agree that no change in circumstances was shown by Charles Dabney which would necessitate the precipitous drop in alimony ordered by the trial court, when the only possible change was the receipt, in liquid assets, of a previous community asset. There was no evidence introduced that Loretta Dabney could support herself in any other manner; although the trial judge had found earlier that she had worked for her son's business part-time, he also relied on her testimony that if she were to work, she would lose her disability payments.
The judgment reducing Loretta's alimony from $550.00 to $150.00 is manifestly erroneous, and we reverse. However, we do not find that Loretta proved a change in circumstances entitling her to an increase. Her expense statement indicated a doubling of expenses, unjustified by any showing of an increase in need. Loretta's circumstances have remained substantially the same as they were at the time of the previous rule. Permanent alimony is limited to an amount sufficient for the spouse's maintenance, including reasonable expenses for food, clothing, shelter, transportation, utilities, and household expenses. Fusilier v. Fusilier, 464 So.2d 1068 (La. App. 1st Cir.1985).
It is hereby ordered that the alimony award of $550.00 per month be reinstated, retroactive to the date of the trial court judgment. See Wasson v. Wasson, 439 So.2d 1208 (La.App. 1st Cir.), writ denied, 443 So.2d 592 (La.1983). All costs are to be assessed to Charles Clinton Dabney.
REVERSED IN PART, AFFIRMED IN PART, AND RENDERED.
LeBLANC, J., concurs.
NOTES
[1] The issues of the traversal of the detailed descriptive list, as well as the injunction to prevent Loretta Dabney from making harassing telephone calls to her ex-husband and his second wife, were settled and were not brought up on appeal.