616 So.2d 744 (1993)
Diane Aucoin LEWIS[1]
v.
Wayne D. LEWIS.
No. CA 91 2335.
Court of Appeal of Louisiana, First Circuit.
March 5, 1993.
Rehearing Denied April 28, 1993.
*745 Michelle F. Grazioso, Baton Rouge, for plaintiff-appellee Diane Aucoin Lewis.
Karen Downs, Baton Rouge, for defendant-appellant Wayne D. Lewis.
Before WATKINS, CRAIN and GONZALES, JJ.
GONZALES, Judge.
The parties herein were divorced in October of 1990. Thereafter, they have been involved in continuing litigation concerning the custody and support of the four minor children of the marriage. On March 13, 1991, Mr. Lewis was awarded sole care, custody, and control of the children, and the court at that time ordered that any visitation by the children's mother, Diane Schilling, be exercised outside the presence of Ted Schilling, her husband. This restriction was based on the trial court finding that Mr. Schilling had molested the youngest Lewis child. On May 14, 1991, Mr. Lewis filed a rule for contempt, child support, and for termination of visitation rights, alleging that Mrs. Schilling had violated the court's order and exercised visitation in the presence of Mr. Schilling. On August 12, 1991, the court rendered judgment dismissing the contempt rule and awarding Mr. Lewis child support in the amount of $243.00 per month, retroactive to May 15, 1991. From this judgment, Mr. Lewis appeals and makes the following assignments of error:
Assignment of Error Number One:
The trial court erred in terminating the hearing on the contempt action filed by Appellant against Appellee for her violation of the restriction of her visitation and for dismissing the contempt rule as well as the request for attorney's fees and costs made by Appellant.
Assignment of Error Number Two:
The trial Court erred in fixing the amount of child support in the amount of Two Hundred Forty-Three and no/100 ($243.00) Dollars per month for the support of the four minor children born to Appellant and Appellee on the following basis:
A. The trial court erred in limiting Appellee's income to minimum wage in computing her portion of the child support obligation.
B. The trial court erred in disregarding the respective stepparent's incomes as a portion of the gross income figures to be used in computing the child support award owed by Appellee.
C. The trial court erred in not including the children's daycare expenses, health insurance expenses, counseling expenses and tutoring expenses in computing the child support award owed to Appellant by Appellee.

ASSIGNMENT OF ERROR NO. 1
Appellant seeks reversal of the trial court's ruling terminating the hearing and dismissing the rule for contempt and for an *746 award of attorney's fees and costs. Appellant contends the trial court was clearly wrong in not punishing Mrs. Schilling for contempt.
At the hearing, the parties stipulated to the allegations contained in paragraphs one through eight of Appellant's rule, which read as follows:
1.
In the judgment rendered on the 13th day of March, 1991, and read and signed on the 20th day of March, 1991, Plaintiff-in-Rule, WAYNE D. LEWIS, was granted the sole care, custody and control of the four minor children, Brannon, Matthew, Blaine, and Blair. DIANE AUCOIN LEWIS SCHILLING, Defendant-in-Rule, was allowed visitation but said visitation was to take place outside of the presence of Ted Schilling, her current husband....
2.
On or about March 29, 1991, Good Friday, DIANE AUCOIN LEWIS SCHILLING phoned Plaintiff-in-Rule's residence and spoke to Martha Swan Lewis[[2]] and requested visitation on Easter Sunday. It was agreed upon between them that visitation would take place from one (1) o'clock p.m. until six (6) o'clock p.m. on that day. On Easter Sunday, March 31, 1991, Defendant-in-Rule and her mother picked the three younger children up at one (1) o'clock p.m. and returned them at six (6) o'clock p.m. as per the agreement of the parties.
3.
Upon returning from visitation Blaine and Matthew told Plaintiff-in-Rule that Ted Schilling had been present throughout their Easter visitation.
4.
On or about April 18, 1991, (Thursday) Defendant-in-Rule once again called and spoke to Martha Swan Lewis and requested weekend visitation for the weekend of the 19th through the 21st of April. It was agreed that Defendant-in-Rule would pick the children up at six (6) o'clock p.m. on Friday and return them at six (6) o'clock p.m. on Sunday.
5.
Defendant-in-Rule, her mother, Gertrude Aucoin, and Ted Schilling arrived to pick up the children. Plaintiff-in-Rule observed Mr. Schilling in the vehicle; however, at the time he was on probation and one of the terms of his probation was not to speak to Defendant-in-Rule; therefore, Plaintiff-in-Rule was afraid to make any effort or statements to stop the visitation.
6.
On Sunday, April 21, 1991, Defendant-in-Rule returned the minor children and Ted Schilling was once against present in the vehicle.
7.
Moreover, Plaintiff-in-Rule, avers that the children once again represented to him that Mr. Schilling had been present the entire time that they were visiting with Defendant-in-Rule.
8.
Subsequent to that weekend Defendant-in-Rule once again requested visitation and Plaintiff-in-Rule refused and this refusal was communicated through Martha Swan Lewis. Plaintiff-in-Rule's refusal was a result of his concern for the children since Defendant-in-Rule was not following the order of this Honorable Court.
Mrs. Schilling testified in court that she informed Mrs. Martha Lewis her husband was going to be present during the visitation and that since Mr. Lewis was the sole custodian, he had the power to give permission to visitation in the presence of Ted Schilling. Mrs. Schilling stated that Martha Swan Lewis had power of attorney from Mr. Lewis with respect to the children and that she had always made arrangements *747 with Mrs. Lewis for visitation with the children, since Mr. Lewis was under a criminal court order not to speak with her.
Mrs. Martha Swan Lewis testified that on April 19th she saw Mr. Schilling arrive with Mrs. Schilling to pick up the children; she states that she did not try to stop them from taking the children because she did not want Mr. Schilling and Mr. Lewis to get into an altercation. Mrs. Lewis testified that although the children had told them Mr. Schilling had been present for the Easter visitation, they did not take action until they confirmed the violation of the visitation restriction during the April 19th weekend. Thereafter, Mr. and Mrs. Lewis refused visitation. Mrs. Lewis denies being told by Diane Schilling that Ted Schilling would be present for the Easter visitation.
The trial court gave oral reasons for dismissing the contempt rule as follows:
Apparently nobody read this judgment. This judgment says and I quote, "it is further ordered, adjudged and decreed that any visitation by Diane Aucoin Lewis [Schilling] with the minor children shall be outside the presence of Ted Schilling". Now, I heard Mrs. Schilling's explanation. Now I hear Mrs. Lewis tell me that when Mr. Schilling showed up in the car with Mrs. Schilling she decided to let the child[ren] go because she didn't want to bother Mr. Lewis. This order applies to Mr. Lewis and Mrs. Schilling. This order was put in the judgment because I felt the children needed protection. It was this court's judgment after hearing the evidence that these children needed protection not from Mrs. Schilling and not from Mr. Lewis, but that Mr. Lewis and Mrs. Schilling had an obligation to protect these children by keeping [them] out of the presence of Mr. Schilling. Mrs. Lewis made as bad a mistake in judgment as Mrs. Schilling did. They all better hope they don't make any mistakes in judgment in the future. The rule is dismissed as to the contempt and attorney fees and costs....
The penalty for contempt of court is provided by La.R.S. 13:4611, and states "the district courts ... may punish a person adjudged guilty of a contempt of court... [f]or ... disobeying ... an order for the right of visitation, by a fine of not more than five hundred dollars, or imprisonment for not more than three months, or both." (Emphasis added.) The word "shall" is mandatory and the word "may" is permissive. La.R.S. 1:3. Thus, the trial court has discretion as to whether the imposition of a penalty is warranted in any given case. The trial judge in this case chose to reiterate and explain the previous order which had been violated and caution Mrs. Schilling and the other parties involved from further disobeying the court's order; it was implied that more severe action would be taken for future infractions. Under the circumstances presented herein, we find no abuse of the trial court's discretion on this issue.

ASSIGNMENT OF ERROR NO. 2
Appellant first complains that the trial court erred in fixing the earning capacity of Mrs. Schilling at minimum wage. Mrs. Schilling testified that her work history included jobs as a secretary, secretary/office manager, realtor, and insurance salesperson. At the time of the trial, Mrs. Schilling was employed assisting her husband in a part-time business, Educational Services, Inc. (hereinafter "ESI"). Mrs. Schilling worked two days per month, approximately six hours per day for $100.00 in pay. Additionally, an ESI telephone line was installed in the Schilling home, which Mrs. Schilling answered for the company, without pay. Mrs. Schilling testified that the ESI company was experiencing financial difficulties so that she volunteered to answer the telephone temporarily without pay, and that it was agreed that when the financial condition of the company improved, Mrs. Schilling would receive a salary, the amount of which was undecided.
The trial court found that there was no evidence as to Mrs. Schilling's income potential, and noted that no expert testimony was presented as to what Mrs. Schilling *748 was capable of earning. Therefore, the trial court imputed a minimum wage earning ability to Mrs. Schilling. Further, the record contains no testimony as to what Mrs. Schilling was actually earning at her prior occupations. Hence, we find no error in the trial court failing to speculate on a figure. However, the court should have considered Mrs. Schilling's actual earnings of $100.00 per month for twelve hours of work, and computed the remainder of a normal forty hour work week at minimum wage. The result is as follows:

52 weeks per year × 40
 hours = 2,080 hours
Less hours actually
 worked 144 hours
 ___________
 1,936 hours
1,936 hours at $4.56 (minimum
 wage) = $ 8,828.16
$100.00 per month for 12
 months (144 hours) = $ 1,200.00
 __________
Estimated Annual Income $10,028.16
Annual Income divided by
 twelve months = $ 835.16 per month

Adding Mrs. Schilling's earning capacity of $835.16 per month to Mr. Lewis's earnings of $2,629.00 per month, results in a combined adjusted gross income of $3,464.68. Applying La.R.S. 9:315.14, Mrs. Schilling's share of the child support for four children ($1,136.82[3]) would be 24% or $272.84.
Appellant also complains that the trial court failed to take into account the income of the parties' current spouses in determining the amount of child support owed. The guidelines for determining child support, in La.R.S. 9:315(6)(c) provide that the "court may also consider as income the benefits a party derives from expense-sharing or other sources; however, in determining the benefits of expense-sharing, the court shall not consider the income of another spouse, regardless of the legal regime under which the remarriage exists, except to the extent that such income is used directly to reduce the cost of a party's actual expenses." (Emphasis added.) As discussed hereinabove, the word "may" is permissive, and vests discretion in the trial court. Thus, the provision in La.R.S. 9:315(6)(c) is discretionary and not mandatory. We find no abuse of the trial court's discretion in failing to consider the incomes of the parties' spouses herein.
Next, appellant argues that the trial court erred in failing to include the daycare expenses incurred by appellant. "Net child care costs shall be added to the basic child support obligation." La.R.S. 9:315.3. (Emphasis added.) Net child care costs are defined by La.R.S. 9:315(7) as, "the reasonable costs of child care incurred by a party due to employment or job search, minus the value of the federal income tax credit for child care." Appellant presented to the trial court only the gross costs of child care; he failed to present any evidence of the amount of the federal tax credit which could be applied.[4] Therefore, an increase for child care expense was properly denied.
Likewise, we find no error in the trial court denial of an increase in the amount of child support for costs related to health insurance, counseling, and tutoring, since the items were found by the trial court to *749 have been insufficiently proved at trial. We find no error in these trial court findings.
For the reasons stated herein, the judgment of the trial court is amended to increase child support awarded to appellant to $272.84 per month, payable in equal installments on the first and fifteenth of each month, and retroactive as indicated in the lower court judgment. All other aspects of the trial court's judgment are affirmed.
AMENDED; AFFIRMED AS AMENDED.
NOTES
[1] Diane Aucoin Lewis has re-married and is referred to herein as Mrs. Diane Schilling.
[2] Martha Swan Lewis is the current wife of Wayne D. Lewis.
[3] Since the parties' combined monthly income falls between the amounts of $3,450 and $3,500 found in the 9:315.14 schedule, La.R.S. 9:315.10(A.) provides, in pertinent part, that "the basic child support obligation shall be based on an extrapolation between the two amounts." There is an approximate 26¢ increase in the support of four children (from $1,133 to $1,146) for each dollar increase in combined monthly income from $3,450 to $3,500. Therefore, multiplying the amount of monthly income over the $3,450 category, $14.68, times 26¢ equals an additional $3.82 in support to be added to the $1,133 figure, for a total of $1,136.82 support owed for these four children. The above extrapolation can be expressed in terms of the following ratio (with "X" being the additional support over the amount of support in the chart for the next lowest amount of income):
 "X" or
Amount Exceeding Additional Support
Next Lowest Income Over Corresponding
in Chart = Amount in Chart
-------------------- -----------------------
Difference Between Difference Between
Stated Schedule Stated Schedule Support
Incomes Amounts
Using this ratio in the present case,
 $14.68 = X, X = 3.82.
 ------ --
 50 13

[4] On appeal, appellant presents in his brief an amount for the federal tax credit; however, this court cannot receive evidence.