642 So.2d 300 (1994)
Sharon Rebecca Bowen BUCHERT
v.
Raymond Louis BUCHERT, Jr.
No. CA93-1819.
Court of Appeal of Louisiana, First Circuit.
August 26, 1994.
*301 Philip J. Dugas, Baton Rouge, for defendant-appellant Raymond Louis Buchert, Jr.
Sylvia Roberts, Baton Rouge, for plaintiff-appellee/appellant-in-answer Sharon Rebecca Bowen Buchert.
Before CARTER, FOIL, GONZALES, WHIPPLE and PITCHER, JJ.
*302 WHIPPLE, Judge.
Plaintiff, Sharon Rebecca Bowen Buchert, and defendant, Raymond Louis Buchert, Jr., were divorced by judgment dated August 28, 1989. This judgment granted plaintiff permanent custody of the four minor children, Raymond Louis Buchert, III, Matthew Buchert, Rebecca Elizabeth Buchert and Leah Theresa Buchert. Defendant was ordered to pay $1,100.00 per month, or $275.00 per child, as well as 50% of any bonuses received from his employer as child support. Defendant was also ordered to maintain health insurance coverage on the children, to pay one-half of all medical, dental and health-related expenses, and to maintain automobile insurance coverage on the minor children. The judgment also ordered defendant to inform plaintiff of any raises and to annually provide plaintiff documentation, such as W-2s, of his yearly income. Finally, plaintiff was awarded permanent alimony in the amount of $750.00 per month.[1]
On June 1, 1990, plaintiff filed a rule for an increase in child support and other relief. By stipulated judgment dated July 26, 1990, child support was increased to $1,475.00 per month. All other provisions of the previous judgment were specifically maintained.
On October 14, 1992, defendant filed a rule to decrease child support and to eliminate post-divorce alimony, based on a decrease in his annual income and the fact that one of the minor children had reached the age of majority. Further, defendant averred that plaintiff had graduated from college, after obtaining a degree in education, and was gainfully employed.
In response, plaintiff filed a pleading styled "Plaintiff's Answer to Rule to Decrease, Rules for Contempt, and for Modification of Child Support, and Increase in Alimony." Plaintiff sought a contempt order against defendant for failing to furnish current W-2 forms, and thereby failing to advise her of changes; for failing to notify her of any bonus payments received and thus failing to pay as child support one-half of any bonus earned; for unilaterally reducing the amount of child support paid when the oldest child reached the age of majority; for failing to pay certain medical expenses; and for failing to make timely support payments, as provided in the August, 1989, and July, 1990, judgments. Additionally, plaintiff sought an increase in child support and alimony.
Defendant's rule for termination of alimony and reduction of child support, and plaintiff's rule for contempt, increase in child support and increase in alimony, were heard on March 3, 1993. Following the hearing, the trial court rendered judgment, denying plaintiff's rule for contempt for defendant's failure to provide W-2 forms and bonus information, and dismissing plaintiff's rule for contempt for defendant's failure to pay outstanding medical bills and child support.[2] The judgment also dismissed plaintiff's contempt rule insofar as she sought to hold defendant in contempt for his unilateral reduction of child support payments upon the oldest child reaching the age of majority. Plaintiff's rule regarding the untimely child support and alimony payments was dismissed.[3]
Additionally, the trial court concluded that plaintiff's needs exceed her income; therefore, she was entitled to continued permanent alimony. The trial court maintained alimony at $750.00 per month, denying plaintiff's rule for an increase in alimony, as well as defendant's rule for termination or reduction of alimony. Defendant was also ordered to pay child support in the amount of $1,650.00 per month.
From this judgment, plaintiff and defendant appeal. On appeal, defendant specifies the following assignments of error:
1. The trial Court erred in ruling that the Post-Divorce Alimony should not be *303 terminated in that it failed to conclude that Appellee's means are sufficient for her support.
2. The trial court erred in its ruling on the issue of child support in the following regards, to wit:
(a) The trial court deviated from the child support guidelines in maintaining certain provisions of a prior judgment without giving specific oral or written reasons therefor;
(b) The trial court included certain sums as "Net Child Care Costs" in the computation of the total child support obligations despite a total lack of evidence that the amount so included reflected "Net" as opposed to "Gross" child care costs and, more importantly, that the amount so included was incurred due to employment or job search;
(c) The trial court found that Appellant was voluntarily underemployed;
(d) The trial court failed to include the cost of health care premiums incurred on behalf of the children in the computation of the total child support obligation; and
(e) The trial court included certain tuition costs in the computation of the total child support obligation despite the absence of a showing of a particular educational need.
Plaintiff answered the appeal, setting forth the following assignments of error:
1. The trial court erred in striking the provisions of the Judgment signed August 28, 1989 requiring Mr. Buchert to disclose his bonus and wage information each year.
2. The trial court erred in failing to include expenses of private school in the child support calculation of two of the minor children.
3. The trial court erred in failing to permit plaintiff to make a proffer of evidence a witness would have testified to regarding the particular educational need of two of the minor children to continue attending private school.
4. The trial court erred in not finding Mr. Buchert in contempt.
5. The trial court erred in striking, sua sponte, provisions of the August 28, 1989 judgment relative to Mr. Buchert's paying 50% of his bonuses as child support and disclosing his income each year.

PLAINTIFF'S ENTITLEMENT TO PERMANENT ALIMONY

(Defendant's Assignment of Error No. 1)
In his first assignment of error, defendant contends that the trial court erred in failing to terminate permanent alimony, or alternatively, erred in failing to reduce the amount previously awarded. We agree.
When a spouse has not been at fault and has not sufficient means for support, the court may award that spouse permanent periodic alimony. LSA-C.C. art. 112(A)(1). In order to be eligible for alimony after divorce, the spouse seeking alimony must be without sufficient means for maintenance or in necessitous circumstances. Alford v. Alford, 610 So.2d 923, 925 (La.App. 1st Cir.1992). Permanent periodic alimony shall be revoked if it becomes unnecessary. LSA-C.C. art. 112(A)(4).
To prevail in an action to reduce or terminate a previous alimony award, a change in circumstances of the payor or payee from the time of divorce to the time the motion is filed must be proven. Dabney v. Dabney, 603 So.2d 786, 789 (La.App. 1st Cir.), writ denied, 607 So.2d 563 (La.1992). The trial court's determination whether to reduce, increase, or continue the amount of alimony should not be overturned or modified by an appellate court absent a clear abuse of discretion. Dabney, 603 So.2d at 789.
The record herein shows that the original permanent alimony award was made by judgment dated August 28, 1989. At the time of the award, plaintiff was unemployed. However, as of the time defendant filed the rule to terminate or alternatively, to decrease alimony, and as of the time of trial, plaintiff had obtained a degree in business education and was employed, albeit not in her field. Nonetheless, plaintiff had received a bachelor's degree, was employed full time, and *304 earning a net salary in excess of $1,000.00 per month. Thus, plaintiff's circumstances had changed materially in that she had obtained employment which enabled her to earn wages, and had obtained a college degree which increased her earning capacity, factors to be considered in determining whether to award alimony. Alford, 610 So.2d at 925.
At trial, plaintiff submitted a list of monthly expenses to establish that she has insufficient means for her support and that she is in necessitous circumstances. Permanent alimony is limited to an amount sufficient for a spouse's maintenance, including reasonable expenses for food, clothing, shelter, transportation, utilities and household expenses. Dabney, 603 So.2d at 790. Thus, the issue presented to this court is whether plaintiff has sufficient means for her maintenance and support. Plaintiff's expense statement sets forth the following monthly expenditures required for her maintenance: food $423.00; clothing$133.00; shelter $500.00; transportation$228.00; utilities $248.00; household expenses$75.00. These expenses total $1,607.00. However, we note that these figures represent combined monthly expenses for plaintiff and the minor children. The record shows that at the time of trial, plaintiff was receiving $1,106.25 per month in child support and was earning a net monthly salary of approximately $1,175.00 per month.
After carefully reviewing the record herein, particularly the expense statement submitted at trial, we conclude that plaintiff's monthly expenses are well within her monthly net income. We can find no basis in the record to establish that plaintiff has insufficient means for her support, or that she is in necessitous circumstances. The expense list shows no unusual or major financial obligations. Since the original alimony award, there has been a significant change in circumstances, in that plaintiff has obtained employment and a college degree. Therefore, finding no basis in the record for the continued award of permanent alimony, we conclude that the trial court abused his discretion in making the award. Accordingly, the judgment of the trial court awarding plaintiff post divorce alimony is reversed.
This assignment of error has merit.

CHILD SUPPORT AWARD
The March 19, 1993, judgment, which is the basis of this appeal, fixed child support in accordance with the Guidelines for Determination of Child Support, LSA-R.S. 9:315 et seq. (hereinafter referred to as the guidelines).[4] The judgment at issue herein, insofar as it pertains to child support, provides as follows:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that with respect to the previous Judgments entered herein, the Court will continue the provisions of the Judgment of August 28, 1989 with respect to Defendant being ordered to provide health insurance coverage for the minor children, and to pay one-half of the minor children's health related expenses including, but not limited to medical treatment, surgery, therapy of any kind, dental and orthodontic treatment, optical expenses and medications, as well as the automobile insurance for the minor children, as written, but the Court will strike the provisions of the August 28, 1989 judgment relative to Defendant's bonuses and W-2s.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that with respect to the rules to decrease child support and to increase child support, the Court finds Defendant, RAYMOND LOUIS BUCHERT, JR. voluntarily terminated his employment at which he was earning FIVE THOUSAND SEVEN HUNDRED EIGHT AND NO/100 ($5,708.00) DOLLARS per month, to take a position at which he is earning FIVE THOUSAND AND NO/100 ($5,000.00) DOLLARS per month, and therefore, the child support will now be fixed at [sic] using the figure of *305 $5,708.00 per month as Defendant's gross monthly income, and Plaintiff's gross monthly income at FIFTEEN HUNDRED FIVE AND NO/100 ($1,505.00) DOLLARS per month, and the Court having found that to the basic child support obligation should be added the sum of SEVENTY AND NO/100 ($70.00) for child care, and the sum of TWO HUNDRED SIXTY-SIX ($266.00) DOLLARS per month for the tuition at Bishop Sullivan School for MATTHEW BUCHERT, based on the Court's being convinced by the evidence of Ms. Mary Feduccia [sic] that MATTHEW BUCHERT has a particular educational need to remain at his said school, Defendants child support obligation is now fixed at the sum of ONE THOUSAND SIX HUNDRED FIFTY AND 00/100 ($1,650.00)....
On appeal, both parties assign error to certain provisions regarding child support.

Voluntary Under-Employment

(Defendant's Assignment of Error No. 2(c))
In this assignment of error, defendant contends that the trial court erred in finding that he was voluntarily underemployed, thereby miscalculating his gross monthly income.
To apply the guidelines, the court must determine the amount of the combined gross income of plaintiff and defendant. LSA-R.S. 9:315.2(C); Germany v. Germany, 599 So.2d 350, 353 (La.App. 1st Cir.1992). Income is defined in LSA-R.S. 9:315(6) as:
(a) Actual gross income of a party, if the party is employed to full capacity; or
(b) Potential income of a party, if the party is voluntarily unemployed or underemployed. A party shall not be deemed voluntarily unemployed or underemployed if he or she is absolutely unemployable or incapable of being employed, or if the unemployment or underemployment results through no fault of neglect of the party.
If a party is "voluntarily underemployed," the court must consider the party's "income earning potential" in determining combined gross income. LSA-R.S. 9:315.9. Pursuant to LSA-R.S. 9:315.9 and LSA-R.S. 9:315(6)(b), a party is not considered voluntarily underemployed if:
1. He is caring for a child of the parties under age five;
2. He is physically or mentally incapacitated;
3. He is absolutely unemployable;
4. He is incapable of being employed; or
5. His unemployment or underemployment results through no fault or neglect of his own.
Germany, 599 So.2d at 353-54.
In the instant case, the trial court found that defendant voluntarily left his employment at Montgomery Ward, where he was earning a gross monthly salary of $5,708.00, and accepted a position at Target, earning a gross monthly salary of $5,000.00. In calculating the combined gross monthly income of the parties, the trial court used the figure of $5,708.00 for defendant's gross monthly income. On appeal, defendant argues that the trial court accordingly erred, as the decrease in salary was not the result of defendant's fault or neglect.
As an appellate court, we are mindful that the trial court has wide discretion in determining the credibility of witnesses and that its factual determinations, such as whether a party is voluntarily underemployed, will not be disturbed on appeal absent manifest error. McHale v. McHale, 612 So.2d 969, 973 (La.App. 2nd Cir.1993). However, based on a careful evaluation of the record in this case, we find that the trial court was manifestly erroneous in concluding that defendant was voluntarily underemployed and in fixing his gross monthly income at $5,708.00.
Our review of the record herein fails to disclose any reasonable factual basis for the conclusion that defendant was in bad faith in changing employment, or that he was at fault or neglectful in the circumstances resulting in his reduction of income. Contrariwise, the record reflects that defendant was reasonable and justified in changing his employment so as to reap long-term economic benefits. See McHale, 612 So.2d at 973-974. The record establishes that defendant left his *306 employment for legitimate and compelling reasons, as defendant testified that he had worked at Montgomery Ward for two years and had never received a raise or bonus. He stated that his last evaluation had not been favorable and that the company was in the process of "cutting back" on management personnel. Defendant testified that he was fearful of losing his job. Defendant stated that he was approached by a representative of Target, his current employer, and offered what he considered more stable employment, with an opportunity for increased earnings and advancement potential. The starting salary with the new company was $5,000.00 per month.
While the record is clear that defendant voluntarily ceased his employment with Montgomery Ward to accept a position at Target, we cannot conclude that his actions were in bad faith, or that he was at fault or neglectful in his reduction of salary. The trial court was manifestly erroneous in concluding otherwise.
This assignment of error has merit.

Private School Tuition

(Defendant's Assignment of Error No. 2(e);

Plaintiff's Assignments of Error Nos. 2 & 3)
The trial court added to the basic child support obligation the sum of $266.00, representing the costs of Matthew Buchert's private school tuition at Bishop Sullivan School. On appeal, defendant contends that the trial court erred in adding the private school tuition because there was no showing that Matthew had a particular educational need to attend private school. Plaintiff argues that the inclusion of Matthew's tuition was proper and also contends that the trial court erred in failing to include private school tuition for the other two minor children, Becky Buchert and Leah Buchert. Plaintiff also contends that the trial court erred in refusing to allow her to present testimony to establish that Becky and Leah had particular educational needs which could only be fulfilled by their remaining in private school.
Plaintiff attempted to offer the testimony of Maria Cloessner, principal of Most Blessed Sacrament Catholic School, where plaintiff's two daughters attended school. Ms. Cloessner's testimony was offered to show that the children had a particular educational need to remain at their present school because Leah was potentially dyslexic and in need of a particular setting, and to establish that each girl had a special need to remain at the private school where she had been academically successful. Despite the witness' educational background, which included a Masters degree, plus 45 hours post-graduate work in special education administration, and her prior work in educational needs assessment, the trial court refused to accept Ms. Cloessner as an expert in the field of education in assessing particular educational need and refused to allow her to testify concerning the children's need to remain in private school, where they were doing well.[5] The trial judge stated that the need to remain in private school in order to continue a successful experience and avoid disruption is not a particular educational need as contemplated by the statute.
However, the very next witness to testify was Mary Feduceia, the guidance counselor at Bishop Sullivan High School, where Matthew Buchert attends school. At the time of trial, Matthew was in his junior year at Bishop Sullivan. Ms. Feduceia was accepted by the court as an expert in guidance and counseling and provided detailed testimony to show Matthew's need to remain in private school in order to continue his academic success. She testified that Matthew was doing exceptionally well at Bishop Sullivan and was in an honors accelerated program, not offered *307 at the public school which Matthew would otherwise attend. According to Ms. Feduceia, Matthew was to be nominated the next year for college scholarships. She further testified that Matthew had excelled at Bishop Sullivan, felt accepted, and was highly respected by his peers, as well as the faculty. She also testified that a change in schools would be emotionally distressing and would impede Matthew's educational progress.
Matthew also testified at trial. Matthew stated that he has many friends at Bishop Sullivan, including the guidance counselor, teachers and coaches. He further stated that it would be tremendously stressful for him to transfer to another school. He testified that in his estimation, he was receiving a better education at Bishop Sullivan than he would receive at a public school and that the religious aspect of his catholic education was helpful in coping with the circumstances surrounding his parent's divorce.
Based on this evidence, the trial court added the expenses of Matthew's private school tuition to the basic child support obligation, stating that Matthew had a particular educational need to remain in private school.
Louisiana Revised Statute 9:315.6(1) sets forth other expenses which may be included in addition to the basic child support obligation and provides, in part, as follows:
By agreement of the parties or order of the court, the following expenses incurred on behalf of the child may be added to the basic child support obligation:
(1) Any expenses for attending a special or private elementary or secondary school to meet the particular educational needs of the child.
Plaintiff argues that the trial court erred in refusing to include the cost of private school tuition for all three minor children, because the parties had an agreement to send the children to private school. The trial court specifically found that no such agreement existed. In light of the directly conflicting testimony of the parties as to whether there was an agreement, we cannot say that the trial court was manifestly erroneous in finding that no such agreement existed. In the absence of an agreement between the parties, in order to warrant the inclusion of private school tuition expenses in a child support award, some evidence must be presented to show a particular educational need of the child which is met by attendance at private school. Bertrand v. Bertrand, 637 So.2d 531 (La.App. 1st Cir. 1993).
Contrary to the trial judge's statements at trial, a particular educational need of a child to remain in private school does include consideration of the child's history of attending a private school and whether a continuation of their education in that setting is in the child's best interest. See Schulz v. Schulz, 630 So.2d 847, 850 (La.App. 4th Cir. 1993) (where the trial court made a specific finding that the child had a particular need to attend the catholic school because she had done so all of her life); Widman v. Widman, 619 So.2d 632, 637 (La.App. 3rd Cir.1993) (where the appellate court affirmed private school tuition in light of the fact that the children had attended private school for many years, and the continuation of that education was in their best interests); Dempsey v. Stevens, 611 So.2d 815, 818 (La.App. 3rd Cir.1992) (where the appellate court affirmed an award for private school tuition, noting that the child's successful continuation of her education in a proven academic environment was in her best interest); and Corley v. Corley, 600 So.2d 908, 909 (La.App. 4th Cir.1992) (where the appellate court affirmed the inclusion of private school tuition where the evidence established that the parties chose to send their children to private school and that the children had gone to private school for years, and the continuation of their education in that school was in their best interests).
Defendant contends on appeal that the trial court erred in including Matthew Buchert's private school tuition in the basic child support obligation, arguing that the record fails to disclose that he had a particular educational need to remain in private school. Considering the jurisprudence cited above, the expert testimony of Ms. Feduceia, and the testimony of Matthew Buchert, we find that the trial court was not manifestly *308 erroneous in concluding that Matthew had a particular educational need, within the meaning of the child support guidelines, to continue his education at Bishop Sullivan. Insofar as the trial court found that Matthew had a particular educational need to remain in private school, and accordingly, added his tuition to the basic child support obligation, we find no error.
However, we conclude that the trial court erred in refusing to allow plaintiff to present evidence to establish that it was in her daughters' best interest to continue attendance at private school and to show a particular educational need therefor.[6] In view of the inadequacies of the record on this issue, and in the interest of justice, we must remand this matter to the trial court for reconsideration of whether to also include the private school tuition for plaintiff's daughters, in accordance with the views expressed herein.

Health and Automobile Insurance for the Minor Children

(Defendant's Assignments of Error Nos. 2(a) and (d))
In addition to awarding child support, the original divorce judgment, dated August 28, 1989, ordered defendant to maintain health and automobile insurance on the minor children. The judgment of March 19, 1993, at issue herein, fixed defendant's monthly child support obligation at $1,650.00, in accordance with the guidelines, and specifically maintained the provisions of the previous judgment regarding health and automobile insurance coverage, in addition to the $1,650.00 award.
On appeal, defendant contends that the trial court erred in maintaining the provisions of the earlier judgment dealing with health and automobile insurance coverage. Additionally, defendant contends that the trial court erred in failing to include the cost of health insurance premiums incurred on behalf of the minor children, when computing the total child support obligation.
Louisiana Revised Statute 9:315.2 requires that the trial court calculate a basic child support obligation by combining the parents' adjusted gross incomes, determining each party's percentage share of the combined adjusted gross income, and applying these calculations to the schedule contained in LSA-R.S. 9:315.14. The total child support obligation is thereafter computed by adding together the basic child support obligation, net child care costs, health insurance premiums, extraordinary medical expenses and other extraordinary expenses. LSA-R.S. 9:315.8(A). Each parent's share of the total child support obligation is then determined by multiplying his or her percentage share of the combined adjusted gross income by the total child support obligation. LSA-R.S. 9:315.8(C). Thereafter, the court fixes and awards, as a money judgment, total child support obligation in favor of the domiciliary parent or parent with legal custody, in accordance with LSA-R.S. 9:315.8(D), which provides, as follows:
The party without legal custody or nondomiciliary party shall owe his or her total child support obligation as a money judgment of child support to the custodial or domiciliary party, minus any court-ordered direct payments made on behalf of the child for work-related net child care costs, health insurance premiums, extraordinary medical expenses, or extraordinary expenses provided as adjustments to the schedule. (Emphasis added.)
Clearly, the trial court has the authority to require one party to pay directly, on behalf of the child, certain expenses, including health insurance premiums. However, if the court, in its discretion, chooses to do so, then the total child support obligation awarded against the non-custodial or non-domiciliary parent must be reduced accordingly. Alternatively, the trial court must add the expenses of health insurance premiums to the basic child support obligation, in accordance with LSA-R.S. 9:315.8(A).
In this case, the trial court did not add the expenses of health insurance premiums to the basic child support obligation; *309 nor did the trial court reduce defendant's total child support obligation by the amount he pays for health insurance premiums. We find that the trial court erred, as the judgment establishing the total child support award failed to appropriately account for the health insurance premiums.
Additionally, we find that the trial court erred in requiring that defendant maintain automobile insurance for the minor children. The child support guidelines provide for the inclusion of certain expenses in calculating the total child support obligation. Because there is no provision in the guidelines for adding automobile insurance coverage to the basic child support obligation, we must presume that those expenses are included in the statutory figures set forth in the schedule for support provided by LSA-R.S. 315.14. See Germany, 599 So.2d at 355.
These assignments of error raised by defendant likewise have merit.

Child Care Costs

(Defendant's Assignment of Error No. 2(b))
In this assignment of error, defendant contends that the trial court erred in adding the amount of $70.00 to the basic child support obligation.
LSA-R.S. 9:315.3 provides that "[n]et child care costs shall be added to the basic child support obligation." LSA-R.S. 9:315(7) defines net child care costs as "the reasonable costs of child care incurred by a party due to employment or job search, minus the value of the federal income tax credit for child care."
The appellate record contains very little evidence regarding plaintiff's claim for child care costs. Plaintiff testified that the $70.00 per month was the total amount she paid to babysitters for child care. When asked whether that amount reflected any tax credits, she responded in the negative.
It is clear that the trial court erred in adding the gross child care costs in computing the total child support obligation, without consideration of any tax credits which may be available to plaintiff.
Accordingly, on remand, in recalculating the child support obligation, as set forth above, the court should also fix the obligation utilizing net child care costs in conformity with the statute and the views expressed herein. See Lewis v. Lewis, 616 So.2d 744, 748 (La.App. 1st Cir.), modified 624 So.2d 1211 (La.1993).

OTHER ISSUES RAISED IN PLAINTIFF'S ANSWER TO APPEAL
Plaintiff's answer to the appeal raises several issues relating to the trial court's refusal to find defendant in contempt of court and the trial court's refusal to continue, in full force and effect, in the judgment at issue herein certain provisions from the previous judgment of August 28, 1989.

Failure to Find Defendant in Contempt of Court

(Plaintiff's Assignment of Error No. 4)
In this assignment of error, plaintiff contends that the trial court erred in refusing to find defendant in contempt of court for violating the earlier judgments rendered by the court. Specifically, plaintiff argues that defendant should have been held in contempt of court for unilaterally reducing the in globo child support award by one-forth when the oldest child reached the age of majority, for deliberately sending the child support checks late, and for failing to timely pay medical expenses.
Louisiana Code of Civil Procedure article 224 provides, in pertinent part:
Any of the following acts constitutes a constructive contempt of court:
* * * * * *
(2) Wilful disobedience of any lawful judgment, order, mandate, writ, or process of the court; ...
Wilful disobedience is an act or failure to act that is done intentionally, knowingly and purposefully, without justification. A trial court is vested with great discretion in determining whether a person is to be held in contempt for wilful disobedience of a trial court judgment. Widman v. Widman, 93-613 (La.App. 3rd Cir. 2/2/94); 631 So.2d 689, *310 693. Moreover, the trial court has discretion as to whether the imposition of a penalty is warranted in any given contempt case. LSA-R.S. 13:4611; Lewis, 616 So.2d at 747.
The trial court heard the explanations offered by defendant regarding his decision to reduce the child support and was satisfied that defendant's actions were not wilfully disobedient. Additionally, the trial court heard conflicting testimony concerning the reasons for any untimely payments of child support and medical expenses, and chose to admonish defendant rather than find him in contempt of court. Based on our review of the record herein, we are unable to conclude that the trial court abused its discretion in admonishing defendant.
This assignment of error is without merit.

Stricken Provisions of Earlier Judgment

(Plaintiff's Assignments of Error Nos. 1 & 5)
The August 28, 1989, judgment ordered defendant to disclose certain information to plaintiff, including the receipt of raises and bonuses. Additionally, defendant was ordered to furnish documentation of his income annually, and to pay plaintiff one-half of any bonus he received. In the judgment at issue herein, the trial court refused to maintain these provisions. On appeal, plaintiff contends that the trial court erred in striking these provisions.
We find no error in the trial court's judgment insofar as the court refused to continue the requirement of the previous judgment that defendant pay 50% of any bonus he received from his employer as additional child support. The guidelines do not contain any provision for the inclusion of such amounts, and in the event defendant would receive such a bonus, the amount would be included in his adjusted gross income in calculating his basic child support obligation.
Plaintiff also contests the trial court's action in deleting the requirement imposed in the previous judgment that defendant inform plaintiff of any bonus received and provide income documentation annually. Neither party has cited authority which prohibits or requires annual disclosure of income records by the payor spouse. However, we recognize that there may be value in requiring such disclosure. As noted by plaintiff, these provisions could allow the parties to negotiate modification of the child support award without the expense and inconvenience of filing multiple rules. However, we find merit in plaintiff's assignment of error for other reasons. We have reviewed defendant's pleadings and find that such relief was not requested, nor was the issue litigated at trial. A court may grant the relief warranted by the averments contained in the pleadings and the evidence. However, the trial court did not have jurisdiction to decide controversies which the litigants had not raised. See Gibson v. Gibson, 592 So.2d 855, 858 (La.App. 3rd Cir.1991).
Accordingly, the judgment is also reversed insofar as it deleted the disclosure and accounting provisions of the prior judgment.

CONCLUSION
For the above and foregoing reasons, the March 19, 1993, judgment of the trial court, awarding plaintiff post-divorce alimony, is hereby reversed. Additionally, in view of the legal and factual errors made by the trial court, as set forth herein, we reverse the judgment of the trial court, which fixed defendant's child support obligation at $1,650.00. However, we hereby suspend our reversal of the child support judgment, and defendant is ordered to continue paying child support in the amount of $1,650.00 per month until the trial court has conducted an evidentiary hearing for the redetermination of child support in accordance with the views expressed herein.[7] Moreover, we reverse the judgment insofar as it deleted the disclosure and accounting provisions of the previous judgment. In all other respects, the judgment is affirmed. This case is remanded to the trial court for further proceedings consistent with the views expressed herein. All costs are assessed equally between the parties.
*311 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
CARTER, Judge, concurring in part and dissenting in part.
I agree with the majority opinion in all respects except the majority finding that the trial judge was manifestly erroneous in concluding that appellant was voluntarily underemployed.
NOTES
[1] The judgment contained several other provisions which are not relevant to this appeal.
[2] While the trial court did not find defendant in contempt, the trial court did find that arrearages were due for child support payments, in the amount of $1,935.28, and for unpaid medical expenses, in the amount of $2,204.28. These past due amounts were made executory, and plaintiff was also awarded $500.00 in attorney's fees and costs.
[3] The trial court stated that defendant had been admonished in court and directed to make future support payments timely.
[4] The guidelines contained in LSA-R.S. 9:315 et seq. are to be utilized in any proceeding to establish or modify child support filed on or after October 1, 1989. LSA-R.S. 9:315.1(A). The provisions are applicable to the proceedings herein, as defendant's rule was filed on October 14, 1992, and plaintiff's rule was filed on November 10, 1992.
[5] In addition to refusing to accept Ms. Cloessner as an expert in educational needs assessment, the trial court refused to allow plaintiff to proffer the witness' testimony. Instead, the court restricted the proffer to a statement by counsel setting forth what she "[intended] to show by the testimony of this witness rather than telling [the court] what her testimony [was] going to be."

By restricting plaintiff's offer of proof in this manner, the trial court's ruling prevented plaintiff from developing testimony on a material issue at the hearing, namely the educational needs of each child herein, and, in particular, Leah Buchert's dyslexic tendencies.
[6] We conclude, from our review of the record herein and the comments by the trial court, that the trial court narrowly interpreted the statute to mean that a "particular educational need" requires a showing that the child suffers from a recognized or diagnosed learning disability.
[7] See Preis v. Preis, 631 So.2d 1349, 1358 (La. App. 3rd Cir.1994).