808 So.2d 641 (2001)
Dianne W. HUDNALL
v.
Hadley HUDNALL.
No. 2000 CA 0330.
Court of Appeal of Louisiana, First Circuit.
May 11, 2001.
*642 Mark D. Plaisance, Baker, LA, Charlene Charlet Day, Zachary, LA, for plaintiff-appellee Dianne W. Hudnall.
Lorna M. Brasseaux, Baton Rouge, LA, for defendant-appellant Hadley Hudnall.
BEFORE: GONZALES and PETTIGREW, JJ., and SEXTON,[1] J. Pro Tem.
PETTIGREW, J.
This is an appeal from a judgment by the trial court ordering the defendant to pay $1,246.00 a month in child support for his minor child and $3,804.00 to the Social Security Administration for an overpayment of benefits to the minor child. For the following reasons, we affirm in part, reverse in part, and remand.

FACTS AND PROCEDURAL HISTORY
Dianne W. Hudnall and Hadley Hudnall were married on April 9, 1983, in Clinton, Louisiana. The parties separated in July of 1988. At the time of the separation, Dianne was pregnant for Taylor C. Hudnall, who was subsequently born on January 18, 1989. A judgment of divorce was rendered on April 27, 1989. According to the record, the divorce judgment did not provide for child support, but did require Hadley to carry health insurance for Taylor.
On March 27, 1997, the divorce judgment was amended to provide for the custody and support of Taylor. Dianne was granted permanent care, custody, and control of Taylor subject to reasonable visitation by Hadley. Further, Hadley was ordered to pay monthly child support in the amount of $600.00 for a period of six months, and thereafter in the sum of $500.00 per month. Hadley was also ordered to bear responsibility for one-half of the cost of medical insurance in the event that Medicaid coverage for Taylor was ever terminated.
Subsequently, on September 24, 1998, Dianne petitioned the court for an increase in child support because of a change in circumstances. Dianne detailed this "change in circumstances" as follows:
1) HADLEY HUDNALL'S income has substantially increased, and the expenses of DIANNE W. HUDNALL and the minor child, TAYLOR C. HUDNALL, have increased.

*643 2) Due to the child's need for extraordinary medical treatment in that on October 23, 1997, surgery on the child's foot was required to aid her in walking. This surgery resulted in her not attending school from the end of October until the middle of January. Because the child was not attending school, she needed a full time sitter. Due to the child's handicap, a certified nurse's assistant who knows sign language was hired for babysitting. This sitter cost approximately $200.00 to $220.00 per week.
3) Due to the fact that DIANNE W. HUDNALL has a full time job, a certified sitter is needed for the twenty-six (26) days of holidays during the school year at $45.00 per day for a total cost of $1,170.00 per school year.
4) There are one hundred thirty six (136) days of after school care for a total cost of $1,700.00. This one hundred thirty six (136) day estimate of after school care does [take] into account the fact that HADLEY HUDNALL does customarily care for the child on Wednesday afternoon of each week.
5) Due to the child's physical handicaps, additional surgery will soon be required which will result in additional costs.
6) The medical card was forfeited and mover shows that she is being required to repay more than $4,896.99 for an overpayment of Supplemental Security Income payments paid in error to Taylor
C. Hudnall. Initially, this balance was over $5,000.00, but payments of $49.40 were deducted from the $223.00 benefit check received by Taylor C. Hudnall. At this point, all benefits have been lost. DIANNE HUDNALL has had to provide Blue Cross insurance for the cost of $177.00 monthly.
The matter proceeded to hearing on September 15, 1999, at which time the court heard from the parties and other witnesses. Thereafter, the court rendered a written opinion on September 30, 1999, and a judgment on October 28, 1999, wherein the court increased Hadley's monthly support obligation from $500.00 to $1,246.00. The court further ordered Hadley to pay his proportionate share of all extraordinary medical expenses incurred on behalf of Taylor and his proportionate share ($3,804.00) of the social security overpayment.[2]
It is from this judgment that Hadley has appealed, assigning the following specifications of error:
1. The trial court erred in modifying the child support obligation in that Dianne failed to establish a change in circumstances.
2. The trial court erred in finding that [Hadley's] gross monthly income was $9,293.00.
3. The trial court erred in using a percentage of the gross receipts of one of [Hadley's] corporations as [Hadley's] gross income.
4. The trial court erred in finding that H & R Development had $14,598.00 in income for 1997.
5. The trial court erred in finding that [Hadley] received a monthly income from H & R Development in the amount of $677.00.
6. The trial court erred in setting the amount of the child support award.

*644 7. The trial court erred in finding [Hadley] liable for the reimbursement to Social Security.

MODIFICATION OF CHILD SUPPORT: CHANGE OF CIRCUMSTANCES
Louisiana Civil Code article 142 provides for modification of a child support award upon a showing of a change in circumstances of either the parent or the child. Further, La.R.S. 9:311(A) provides, "An award for support shall not be reduced or increased unless the party seeking the reduction or increase shows a change in circumstances of one of the parties between the time of the previous award and the time of the motion for modification of the award."
As recently clarified by the supreme court in Stogner v. Stogner, 98-3044, pp. 11-12 (La.7/7/99), 739 So.2d 762, 769-70, the party seeking modification need only prove a change of circumstances sufficient to justify an increase or decrease in child support. What constitutes a change in circumstance is determined on a case by case basis and falls within the great discretion of the trial court. Stogner, 98-3044 at 12, 739 So.2d at 770; Rousseau v. Rousseau, 96-502, p. 4 (La. App.3 Cir.12/26/96), 685 So.2d 681, 682-83. Each case will rise or fall on the peculiar facts adduced, and an appellate court will not disturb the trial court's decision in these matters absent clear abuse of discretion. Id.
The party seeking modification of a child support award bears the burden of proving that a change in circumstances has occurred. Once the moving party proves a change in circumstances, a presumption exists that the support obligation must be modified. The burden then shifts to the other party to disprove the change or otherwise overcome the presumption. Barrios v. Barrios, 95-1390, p. 4 (La.App. 1 Cir. 2/23/96), 694 So.2d 290, 293, writ denied, 96-0743 (La.5/3/96), 672 So.2d 691.
In finding a change of circumstances in the instant case, the trial court noted as follows:
In Stogner v. Stogner, 98-3044 (La.7/7/99) [739 So.2d 762], the Court concluded that the burden of proof in cases which seek the modification of a child support award is a change in circumstances, not a substantial change. Changes in circumstances are changes material to the well being of the child. Material increases in incomes of parties is a change in circumstances which justifies a change in a child support obligation. The profits from Mr. Hudnall's corporations have increased and profits must be included in calculating his gross income. Another change in circumstances is evident in that it has become more expensive to care for the minor child. The child is handicapped and has undergone foot surgery which required an extended amount of recovery time. During that time, a full time sitter who is capable of communicating with the child is needed to look after her.
Based on our review of the record, we find no abuse of discretion by the trial court in finding a change of circumstances warranting an increase in Hadley's support obligation. There is sufficient evidence in the record regarding child care expenses for Taylor to support the court's conclusion that it has become more expensive to care for Taylor.
When Taylor was four months old, she was diagnosed as having fluid on her brain. This condition, known as hydrocephalus, required the insertion of a shunt in Taylor's head with a tube running to her stomach to relieve the fluid. In the first two years of her life, Taylor underwent three *645 surgeries on her shunt. At the time of the hearing in this matter, Taylor had just recently undergone orthopedic surgery on her foot because of a disease that affected her nervous system. Following this surgery, Taylor was immobilized for three months. Further, she was scheduled to undergo a similar surgery the month following the hearing.[3]
Taylor has a very limited vocabulary of about ten words and normally communicates through sign language. Taylor is not deaf; however, she will never read nor write. Taylor attends special education classes at Clinton Elementary. With regard to Taylor's mental development, she will never have a mental age of older than eight to ten years old. Taylor sometimes exhibits aggressive and abusive behavior towards herself and others. According to Dianne, this behavior is usually related to Taylor's frustration with being unable to communicate with others.
When asked why child care expenses for Taylor had increased, Dianne responded as follows:
Well, Taylor at first wasI stayed at home. When I went to work I hired someone, a college student, for $4.00 an hour, and she kept Taylor in Hadley's and I[sic] home,[[4]] and we shared the expenses then of the cost of the day care sitter, but she only worked from 8:00 to 12:00, and then Hadley kept her from 12:00 to 4:30, so actually so he wouldn't have to pay for the cost, so he was able to keep her, so he kept her. In the following year I put her in Christian Bible Fellowship, which is a christian school out here, and they kept her for two months and then they told me that they were unable to handle her, that she really needed one on one care, that she was very aggressive, she needed assistance walking, she needs assistance going to the restroom, such as that. Then I started searching for somebody that could keep her at home. Actually when I found Barbara Davis it was by accident, she happened to be a certified nurses [sic] assistant. I hired her at $5.00 an hour. She keeps Taylor after school, on holidays, when Taylor is sick, and she also kept her in October of '97 when Taylor had her surgery for three months. That's when I realized what a bind that was putting me in to have to care, pay for these extra expenses.
Further, counsel for Hadley inquired as to whether Dianne had attempted to locate less expensive child care for Taylor, Dianne testified as follows: "No, I have not because it works so well. Ms. Davis is very good with her, Taylor loves Ms. Davis, they are very compatible, she knows all of her sign language, she knows how to handle her aggressive behavior."
Based on our review of this record, we find no abuse of discretion by the trial court in finding a change of circumstances based on the increase in child care expenses for Taylor. The needs of this child clearly show a change in circumstances, thus establishing a presumption that Hadley's child support obligation must be modified and shifting the burden to Hadley to disprove the change or overcome the presumption. See Barrios, supra. Having thoroughly considered the evidence presented by Hadley regarding this issue, we find that Hadley has failed to carry this *646 burden and that his child support obligation must be modified.[5]

CALCULATION OF CHILD SUPPORT OBLIGATION

Hadley's Gross Income
The majority of Hadley's argument on appeal addresses the trial court's calculation of his gross monthly income. Hadley contends that the trial court's finding that his gross monthly income was $9,293.00 constitutes clear error and that the court failed to apply the proper legal standard in reaching this conclusion. Hadley asserts that based on the evidence in the record, his gross monthly income is $3,753.00, thus constituting only 58 percent of the couple's combined adjusted gross income.
The guidelines for determination of child support are set forth in La.R.S. 9:315.1, et seq., and apply to any proceeding to establish or modify child support filed after October 1, 1989. There shall be a rebuttable presumption that the amount of child support obtained by use of these guidelines is the proper amount of child support. La.R.S. 9:315.1. Generally, the trial court's order of child support is entitled to great weight and will not be disturbed on appeal absent clear abuse of discretion. Campbell v. Campbell, 95-1711, p. 4 (La.App. 1 Cir. 10/10/96), 682 So.2d 312, 316.
Gross income is defined in La.R.S. 9:315(4), in pertinent part, as follows:
(4) "Gross income" means:
(a) The income from any source, including but not limited to salaries, wages, commissions, bonuses, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, social security benefits, worker's compensation benefits, unemployment insurance benefits, disability insurance benefits, and spousal support received from a preexisting spousal support obligation;
(b) Expense reimbursement or in-kind payments received by a parent in the course of employment, self-employment, or operation of a business, if the reimbursements or payments are significant and reduce the parent's personal living expenses. Such payments include but are not limited to a company car, free housing, or reimbursed meals; and
(c) Gross receipts minus ordinary and necessary expenses required to produce income, for purposes of income from self-employment, rent, royalties, proprietorship of a business, or joint ownership or a partnership or closely held corporation. "Ordinary and necessary expenses" shall not include amounts allowable by the Internal Revenue Service for the accelerated component of depreciation expenses or investment tax credits or any other business expenses determined by the court to be inappropriate for determining gross income for purposes of calculating child support.
It is well settled in Louisiana that it is within the trial court's discretion to determine what is an inappropriate expense when determining gross income for purposes of calculating child support. State in the Interest of Penn v. Penn, 97-1269, p. 3 (La.App. 1 Cir. 5/15/98), 712 So.2d 625, 627. Further, one cannot avoid all or part of his child support obligation by exercising exclusive control over a corporation wholly owned by him in order to limit his own salary. Moncus v. Moncus, *647 510 So.2d 1271, 1276 (La.App. 3 Cir.), writ denied, 514 So.2d 462 (La.1987).
After hearing from the parties in the instant case and considering the evidence, the trial court concluded that Hadley had not been completely forthcoming about his income. The court noted as follows:
Parents are obligated to contribute to the support of their children and they must contribute in light of the child's needs as well as the circumstances of the parents. Child support is a primary obligation. Therefore, the Court will not allow a person to shield their income in order to diminish their liability owed to a child. It is the parties [sic] obligation to be honest and forthcoming regarding the establishment of his or her legitimate income and any diminutions to that income. Mr. Hudnall's lifestyle is inconsistent with the amount of income he claims from his two corporations. Accordingly, it is obvious that Mr. Hudnall has not been forthcoming in providing the Court with the necessary information to determine is [sic] actual income. Mr. Hudnall's personal tax returns do not clearly reflect his income because of the numerous benefits he personally enjoys through his corporations, therefore the benefits received are attributable to his gross income. Although Mr. Hudnall only claims a monthly income of about $1400.00, the Court will attribute one third of the gross receipts from Clinton Construction Company to Mr. Hudnall as his current income.
According to the Child Support Guidelines and La.R.S. 315.10(B) [9:315.10(B)], the basic child support obligation each month amounts to $1159.00. Mr. Hudnall's monthly gross income is $9293.00 which amounts to 77.7% of the combined adjusted income. Therefore, Mr. Hudnall's basic support obligation each month is $900.00. Furthermore, Mr. Hudnall's portion of the day care expenses for the child is $346.00 per month.
Based on our review of the record, Dianne's yearly income of $32,000.00 was not in dispute. Hadley's income, however, was not as easily ascertained by the court. In addition to Hadley's testimony regarding his income, the court heard from two expert accounting witnesses. A review of this evidence reveals that the trial court acted within its discretion in calculating Hadley's child support obligation.
Hadley is the sole stockholder of two closely held corporations, Clinton Construction Company and H & R Development Corporation. According to the record, both Clinton Construction Company and H & R Development Corporation frequently contribute to Hadley's living expenses, including but not limited to, utility bills, phone bills, homeowner's insurance premiums, medical insurance premiums, a personal credit card, food expenses, and various household expenses (including expenses associated with a swimming pool that was installed by Clinton Construction Company, a home satellite system that was purchased by H & R Development, and a magazine subscription to Aviation History that is paid for by H & R Development). In addition to these benefits, Hadley drives a company-owned truck for which the company supplies not only fuel, but also maintenance and insurance.
Hadley testified that he generally nets approximately $677.49 per month from Clinton Construction Company. He further indicated he receives no salary from H & R Development.[6] According to the *648 1997 income tax return for Clinton Construction Company, $10,990.00 in compensation was paid to Hadley in 1997. The company's gross receipts for 1997 were $334,554.00, with a gross profit of $174,159.00. Hadley's personal income tax return for 1998 shows that his W-2 wages from Clinton Construction Company were $7,065.00. According to John C. Gautreaux, III, qualified by the court as an accounting expert and called to testify on behalf of Dianne, Hadley's personal income tax returns failed to "clearly reflect his total income" for the years in question. Gautreaux explained that certain benefits Hadley was enjoying should have been claimed as income on his personal returns.
In a similar case involving an owner of a closely held corporation deriving benefits from the corporation, the third circuit court of appeal noted as follows:
We initially note that for owners of closely held corporations, income is not calculated by adding together the value of benefits received with the owner's salary.... The owner of a closely held corporation is more than an ordinary employee. He has unlimited access to the corporate accounts and has complete control over corporate policy. Because closely held corporations present the opportunity for underestimating the value of the benefits received, 9:315(4) effectively disregards the corporate entity and provides that revenues of the corporation will be treated as revenues of its owner. It further provides that only expenses required to produce income are to be deducted from gross receipts in calculating gross income. Also, "any other business expenses determined by the court to be inappropriate" will be disallowed.
. . . .
[T]he benefit Philip derives from having his personal expenses paid by the corporation, as well as his personal use of corporation assets, must be included. The record reflects that the corporation paid personal phone bills and vehicle expenses in addition to life insurance, health insurance, travel expenses, and utilities. Whether these are seen as personal expenses detracting from the corporation's income or whether they are fringe benefits, these must be credited to Philip's gross income.
Baggett v. Baggett, 96-453, pp. 9-10 (La. App. 3 Cir. 4/23/97), 693 So.2d 264, 269 (citations omitted).
As in Baggett, the trial court in the instant case determined that the benefit Hadley derived from having his personal expenses paid by his two closely held corporations must be credited to Hadley's gross income. The court concluded that Hadley's monthly gross income was $9,293.00. Finding that the couples' combined adjusted monthly income exceeded the maximum amount set forth in the schedule contained in La.R.S. 9:315.14, the court, in its discretion, set the monthly child support obligation at $1,159.00, with $900.00 being Hadley's proportionate share. See La.R.S. 9:315.10(B). We find no abuse of discretion by the court in this finding.

Child Care Expenses
On appeal, Hadley questions the reasonableness of Taylor's child care expenses as testified to by Dianne. Hadley contends that Dianne has consistently rejected his attempts to find more affordable care for Taylor. Hadley asserts, "Dianne has refused to even look for child care that *649 is less expensive or explore other alternatives to reducing this expense." Further, Hadley argues that the court erred in that it used gross child care costs, rather than net costs, in making an award for child care costs.
Hadley cites the case of Lewis v. Lewis, 616 So.2d 744 (La.App. 1 Cir.1993) in support of his argument regarding the federal child care income tax credit. In Lewis, this court affirmed the trial court's refusal to allow an increase in child support as a result of an increase in child care expenses where the mover failed to present any evidence of the amount of the federal tax credit that could be applied. Lewis, 616 So.2d at 748. The Louisiana Supreme Court granted, in part, a writ of review and set aside this court's decision affirming the trial court's judgment with respect to the amount of the child support award. The court remanded the matter to the trial court with an order to fix as part of the child support award "net child care costs, which constitute reasonable costs minus a reasonably estimated prospective credit to federal income tax for child care." Lewis v. Lewis, 624 So.2d 1211, 1211-12 (La. 1993).
Pursuant to La.R.S. 9:315.3, net child care costs can be added to the basic child support obligation. "Net child care costs" are defined in La.R.S. 9:315(7) as "reasonable costs of child care incurred by a party due to employment or job search, minus the value of the federal income tax credit for child care."
The evidence adduced at the trial of this matter revealed that Taylor's child care would cost approximately $5,345.00 per year. According to Dianne, she incurred an average of $445.00-$500.00 per month in child care expenses. Dianne testified that these amounts were higher when Taylor was unable to attend school because of the surgery on her foot. During that time, Dianne was required to pay for eight to nine hours of child care for each day that Taylor was home from school. Dianne acknowledged that she did not factor into these expenses the federal child care income tax credit that she received.[7] Based on this evidence, the trial court ordered Hadley to pay his proportionate share (77.7 percent) of Taylor's child care expenses, or $346.00 per month, without consideration of any tax credits that may be available.
While we find the child care expenses as testified to by Dianne are reasonable, we are constrained to follow the supreme court's holding in Lewis. Accordingly, the court's award of $346.00 per month for child care expenses is reversed, and the matter is remanded to the trial court with an order that the court recalculate the award using net child care costs in conformity with the statute and the views expressed herein.

SOCIAL SECURITY OVERPAYMENT
In his final assignment of error, Hadley argues that the trial court erred in finding him liable for reimbursement of his proportionate share to the Social Security Administration for the overpayment of benefits made on behalf of Taylor. Hadley cites no legal authority for this proposition, but merely requests that we reverse that portion of the trial court's judgment.
According to the record, Taylor was receiving Supplemental Security Income payments due to her physical disability. When Dianne's salary increased, Taylor became ineligible for said benefits, and the payments stopped. As indicated by a statement from the Social Security Administration *650 dated June 23, 1998, Dianne was notified that there had been an overpayment of benefits to Taylor and consequently she owed $4,896.99. The trial court found that this was "an expense of the child" and ordered Hadley to pay his proportionate share (77.7 percent), or $3,804.96. We find no abuse of discretion by the trial court in this regard.

CONCLUSION
For the above and foregoing reasons, the judgment of the trial court setting the basic child support obligation at $900.00 per month is affirmed. The court's award of $346.00 per month for child care expenses is reversed insofar as the award for child care expense was based on gross child care costs, rather than net child care costs. However, we hereby suspend our reversal and Hadley is ordered to continue making child support payments in the amount of $1,246.00 per month until the trial court has conducted an evidentiary hearing for the redetermination of child support and issues orders to the contrary. See Buchert v. Buchert, 93-1819, p. 18 (La.App. 1 Cir.8/26/94), 642 So.2d 300, 310. In all other respects, the judgment is affirmed. The case is remanded to the trial court for further proceedings consistent with this opinion. All costs associated with this appeal are assessed against defendant-appellant, Hadley Hudnall.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.
NOTES
[1] Judge Fred C. Sexton, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] In the written opinion rendered on September 30, 1999, the trial court found Hadley's proportionate share of the social security overpayment to be $3,804.96. When there is a discrepancy between the judgment and the reasons for judgment, the judgment prevails. Louisiana Insurance Guaranty Association v. International Insurance Company, 551 So.2d 50, 51 (La.App. 1 Cir.1989).
[3] According to Dianne's appellate brief, Taylor has undergone this second orthopedic surgery.
[4] We note that at some point after Taylor's second surgery, Hadley asked Dianne and Taylor to move back in with him. According to Dianne, she "was under a lot of stress, ... about to be evicted from the apartment, [and]... was losing [her] job."
[5] Having found a change in circumstances based on the increase in child care expenses, it is unnecessary for us to address the other change in circumstances found by the trial court, i.e., the increase in Hadley's gross income.
[6] On appeal, Hadley argues that the trial court confused his testimony when it attributed his $677.00 monthly net pay from Clinton Construction as income from H & R Development. While we recognize this apparent oversight by the trial court, we find it to be harmless error. The court ultimately calculated Hadley's gross income based on the gross receipts of Clinton Construction Company.
[7] We note that Dianne's tax returns were not introduced into evidence and that there is no evidence in the record regarding what, if any, tax credit she received.